[L. A. No. 4129.  Department Two.—March 21, 1918.]

MARIE LALLY (Formerly EASTES), Appellant, **v.** EDWARD G. KUSTER, Respondent.

ATTORNEY AND CLIENT—LIABILITY OF ATTORNEY—DUTY TO FOLLOW IN-STRUCTIONS.—It is the duty of an attorney to follow the instructions of his client in conducting a suit, when specially instructed, except as to matters of detail, and he is liable for all losses resulting from failure to follow such instructions with reasonable promptness and care.

ID.—ACTION FOR NEGLECT—DISOBEDIENCE OF CLIENT'S INSTRUCTIONS—EVIDENCE SUFFICIENT TO ESTABLISH CAUSE OF ACTION.—In an action against an attorney for damages for neglect, in the collection of a note and mortgage, where the undisputed evidence was that in June, 1907, the plaintiff employed the defendant to collect a note and mortgage, then overdue; that suit was begun in October, 1907; that in April, 1908, the plaintiff, by letter, instructed the defendant to "push the case and get judgment as soon as possible"; that in May, 1909, the defendant in a letter advised the plaintiff to pursue a plan of delay, but the plaintiff instead of approving that plan wrote the defendant a letter urging him to "leave no stone un-

turned to get an early decision" and to lose no time in getting service on the defendant in the foreclosure suit; that in June, 1909, the defendant in the foreclosure demurred to an amended complaint; that this demurrer was never presented to the court; that in January, 1910, the attorney wrote to his client that he would try to get the attorney for the defendant to file an answer in the foreclosure case; that nothing further was done for more than two years, when the foreclosure suit was dismissed for want of prosecution, the trial court erred in deciding against the appellant.

ID.—FINDING THAT CLAIM WAS UNCOLLECTIBLE — EVIDENCE INSUFFICIENT.—Evidence examined and found insufficient to sustain a finding by the trial court that the note and mortgage the defendant was employed to collect were uncollectible.

ID.—ALLEGATIONS AND PROOF NECESSARY—BURDEN ON CLIENT.—In an action by a client against an attorney for negligence in conducting the collection of a claim, whereby the claim was lost, the burden is on the client to allege and prove that the claim was turned over to the attorney to collect; that there was a failure to collect; that the failure was due to the culpable neglect of the attorney; that but for such negligence the debt could or would have been collected, which involves the further proof that it was a valid subsisting debt and that the debtor was solvent.

ID.—FAILURE OF CLIENT TO APPEAL.—The suit of a client against an attorney for damages for neglect in conducting a foreclosure suit, which was dismissed for want of diligent prosecution by the attorney, was not barred by the failure of the client to appeal from the judgment of dismissal, and the proximate cause of the loss to the client was not the failure to take such appeal, where the attorney in advising the client that in his judgment the appeal would be successful, also advised her that even if successful on such appeal, she would ultimately lose the case.

ID.—FAILURE OF CLIENT TO BEGIN NEW FORECLOSURE ACTION.—The client in such case was not bound to bring a new suit for foreclosure in the hope that the defendant would not plead the statute of limitations.

ID.—STATUTE OF LIMITATIONS—TIME OF ACCRUAL OF CAUSE OF ACTION. Where a cause of action by a client against his attorney consists in the delay of the attorney only in prosecuting a claim for collection, the cause of action does not arise until the delay has resulted in some injury to the client, as it did in the instant case when the court dismissed the client's foreclosure suit for delay in prosecution.

ID.—MEASURE OF DAMAGES.—The damage to the client caused by the dismissal of her suit to foreclose a mortgage, by the court in which such suit was pending, on the ground of lack of prosecution, which was due to the negligent delay of the attorney, is the loss caused by the dismissal, which would be the amount that could have

been recovered in foreclosure proceedings, less the actual value, if any, of the barred note and mortgage to the appellant, to be determined by the trial court from the evidence on that subject before it.

APPEAL from a judgment of the Superior Court of Los Angeles County.  John M. York, Judge.

The facts are stated in the opinion of the court.

Sidney J. Parsons, for Appellant.

Edward G. Kuster, *in pro. per.*, Gilbert A. McElroy, H. M. Young, and C. W. Butterworth, for Respondent.

WILBUR, J.—This is an appeal from a judgment in favor of the defendant.  The action was brought by the plaintiff to recover damages for neglect by said respondent as appellant's attorney in the collection of a note and mortgage. Two questions are presented by the appeal: Was the respondent guilty of neglect, and, if so, was the appellant damaged thereby?  These issues having been determined by the lower court in favor of the respondent, we are to determine whether or not there is substantial evidence to support its findings.

On June 10, 1907, appellant employed respondent to collect an overdue note and mortgage for $1,767.38, against which the statute of limitations would run, unless suit was brought, October 16, 1907.  This note and mortgage were placed in respondent's hands July 20, 1907.  Suit was begun on October 16, 1907.  Defendant therein demurred to an amended complaint June 17, 1909; the demurrer was never presented to the court, and defendant was never required to answer. Four years and seven months after suit brought, on May 16, 1912, the suit was dismissed by the superior court for lack of diligence in the prosecution thereof, and for lack of merit. During all this time the appellant was pressing respondent to bring said case to a determination, on April 7, 1908, writing: "I wish you would push the case and get judgment as soon as possible."  On June 2, 1909, Mr. Tomlinson wrote respondent: "Both Mr. and Mrs. Eastes [now Lally, appellant] are exceedingly anxious to have this case brought to an early trial.  Of course they desire to win it, but the main point is to get a decision."

CLXXVII Cal.—50

"An attorney's duty, where he is specially instructed, is to follow the instructions of his client, except as to matter of detail connected with the conduct of the suit, and he is liable for all losses resulting from his failure to follow such instructions with reasonable promptness and care." (6 Corpus Juris, p. 204, sec. 234.)

Respondent's position is that in his best judgment as an attorney at law, the policy of delay was deliberately adopted, owing to the strength of an anticipated defense, hereinafter stated at length, and the prospect that the defendant therein, her own principal witness in the case, would die, and that thereafter the suit could be prosecuted with a better prospect of success, and that such policy of delay was adhered to with deliberate purpose, notwithstanding the ever growing prospect of a dismissal for lack of diligent prosecution; that his judgment was fairly exercised and reasonably skillful, and that he is not, therefore, chargeable with negligence. Respondent relies upon the rule that: "Where an attorney is given full discretion to pursue any such course to secure the collection of a debt, as he may deem best, he is not liable for adopting a course that he may consider proper under the circumstances, although the debt may be thereby lost, unless it is shown that his error of judgment was due to a lack of knowledge of plain and elementary principles which every attorney should know." (6 Corpus Juris, p. 701.) Respondent also relies upon the rule that: "An attorney must be held to undertake to use a reasonable degree of care and skill, and to possess to a reasonable extent the knowledge requisite to a proper performance of the duties of his profession. If injury results to the client as a proximate consequence of the want of such knowledge or skill, or from the failure to exercise such care, he must respond in damages to the extent of the injury sustained by his client. . . . An attorney, however, is not liable for every mistake that may occur in practice. If he is fairly capacitated to discharge the duties ordinarily incumbent upon one of his profession, and acts with a proper degree of attention, with reasonable care, and to the best of his skill and knowledge," he will not be responsible for a mere error of judgment when he consults his client, and the latter, after being informed of the legal status of the case, approves the course the attorney proposes to pursue. (6 Corpus Juris, pp. 696, 697.)

Without attempting to analyze in detail the voluminous correspondence between the parties, it seems sufficient to say that respondent fully disclosed his plan of delay to appellant in a letter of May 27, 1909, and also fully and fairly presented the hazard of such a course, and if appellant had acquiesced in that position, or left it to respondent's judgment, we would unhesitatingly affirm the lower court. Instead of such approval, Mr. Tomlinson wrote the above-quoted letter of June 2, 1909, in addition stating therein, "I trust you will leave no stone unturned to get a very early decision, and above all, no time should be lost in getting service on Mrs. Brown" (the defendant in the foreclosure suit). Respondent apparently acquiesced in these instructions, and on January 13, 1910, wrote, advising appellant not to pay taxes payable in April (1910), "before which time I hope this case will be tried and decided." On January 31, 1910, respondent wrote that he would try to get Mrs. Brown's attorney to file an answer. "Thereupon I will have it set for trial at the earliest possible date." Nothing was done in court for more than two years thereafter, when, in response to respondent's motion to restore the demurrer to the calendar, the defendant, Mrs. Brown, succeeded in having the case dismissed. We have here, then, a direct loss due to disobedience of the client's instructions, for which respondent is liable. We have not quoted respondent's testimony nor other evidence concerning the wisdom of his course. The appellant sought a decision of the court on the merits of the case; with the best of motives no doubt, this was prevented by respondent's course. The lower court was in error in deciding against the appellant on this undisputed testimony.

As to damages. The lower court found appellant's mortgage was uncollectible, as it had been paid. In considering the evidence on that subject, it is necessary to bear in mind the rule as to the burden of proof.

"In a suit by a client against an attorney for negligence in conducting the collection of a claim, whereby the debt was lost, the burden rests on the former to allege and prove every fact essential to establish such liability. He must allege and prove that the claim was turned over to the attorney for collection; that there was a failure to collect; that this failure was due to the culpable neglect of the attorney, and that, but for such negligence, the debt could, or would, have been col-

lected. Hence, where a claim is alleged to have been lost by an attorney's negligence, in order to recover more than nominal damages it must be shown that it was a valid subsisting debt, and that the debtor was solvent." (6 Corpus Juris, p. 710, sec. 260, cited as authority in *Vooth* v. *McEachen*, 181 N. Y. 28, [2 Ann. Cas. 601, 73 N. E. 488].)

The question here, then, is whether or not there was substantial evidence to justify the trial court in holding that there was no debt which could have been collected by the respondent, and therefore that the appellant was not injured by the conduct of the respondent. In determining this matter, in view of the decision of the trial court against the validity of the claim, the question being a mixed one of law and fact, we are bound to take the view of the evidence most strongly against the appellant. This view of the evidence tends to show the following state of facts: That Mrs. Brown, the defendant in the foreclosure suit, had known one George Brown (appellant's deceased husband); had been present at his birth; at his mother's death; had from time to time cared for him and had maintained such friendly relations with him that he addressed her as "mother"; that during the last few years of his life he came to her home in Los Angeles and lived with her as a boarder in her home upon the premises secured by the mortgage sought to be foreclosed by the appellant; that he never paid his board bill, although he had agreed to do so; that learning that she was being pressed by the holder of a mortgage upon her premises, he told her that he would take care of the matter and see that it was paid off. For that purpose he requested that she deed the property to him; that he accepted the deed and later reconveyed the same to her with the information that she would never be troubled by the mortgage again. He had in fact secured the release of the mortgage in question by making the renewal mortgage upon the premises (later assigned to and sought to be foreclosed by appellant, his widow). Upon the deed reconveying the property to her being delivered, she discovered that it provided that she "assumed and agreed to pay" a mortgage of $1,767.38 (the mortgage here in question). She therefore corresponded with George Brown, who had left her home and married the appellant, asking him to do something for her, and finally received information from him that it had been paid. In order to explain what had actually occurred it will

be necessary to give some of the details concerning the source from which the mortgage was "paid." George Brown's father had died, leaving him property in trust to three trustees, one of whom, his stepmother (having married a man named Johnson, after the death of the father of George Brown), was named Sarah Johnson. By the terms of the trust the property was to be held for George Brown until he was thirty years old, during which period (after arriving at the age of twenty-five) he was to receive the income therefrom, and upon attaining the age of thirty years it was to be turned over to him, or if he died before that age it was to be turned over to his surviving wife. The trustees, upon the request of George Brown, paid out from this trust fund the face value of the mortgage and interest, and took an assignment thereof from the mortgagee to themselves as trustees. It was undoubtedly the expectation of all concerned that upon George attaining thirty years of age, the mortgage would be turned over to him, he would satisfy the same of record, and the whole matter would be disposed of. No collection of interest was made from Mrs. Brown, the defendant in the foreclosure proceeding. George Brown died at the age of twenty-eight. In pursuance of the above-mentioned will and trust thereunder the trustees turned over all the balance of the property held by them in trust for the deceased and his surviving wife to the appellant herein, his surviving wife, including, among other assets, the mortgage in question. The plaintiff, of course, secured no greater rights against Mrs. Brown, the defendant in the foreclosure suit, than the trustees had; but the mortgage note was not extinguished by payment thereof or by operation of law. George Brown, as against the appellant, was entitled to the interest on the fund represented by his mortgage note, and to that extent the interest may be considered as paid or extinguished, but he had no right to the principal fund invested in said note unless he lived to be thirty years of age. Upon his death it belonged to his surviving wife. The trustees accepted and treated the mortgage as an asset in their hands and accounted for the same to the court in the trustee's proceedings. So far as the defendant in the foreclosure proceedings, Mrs. Brown, was concerned, she was not entitled to complain of the failure of George Brown to make her a gift. It was not claimed that he owed her the amount of the mortgage. We cannot assume

in this case that the court in the trial of the mortgage foreclosure proceeding would have come to an erroneous conclusion because of sympathy for the defendant, Mrs. Brown. The utmost that we can assume on the appeal of the instant case is that the most favorable decree she could have secured would have been one based upon the truth of her testimony and all the inferences properly deducible from that testimony. On this appeal this court is substantially in the situation that it would be in reviewing the decision of the trial court in the mortgage foreclosure proceeding had the evidence offered here been introduced in that case and the decision therein been favorable to the defendant, Mrs. Brown.

Respondent claims that the judgment of dismissal for lack of diligence was erroneous; that he was prepared to seek a rehearing upon that matter, and in case of failure thereon, to appeal from the order. He contends that such an appeal would have been successful, and that therefore the proximate cause of the loss to the appellant was the failure to take such an appeal. He also claims that appellant should have brought a new suit to foreclose the mortgage in question, and should not rest upon the proposition that the mortgage was barred by the statute of limitation; that until she had actually been defeated in a new proceeding to foreclose by a plea of the statute of limitation she cannot be heard to say that a loss had actually accrued to her.

With regard to the failure to appeal from the judgment of dismissal: The appellant abandoned the appeal after being advised by the respondent that, in his judgment, the appeal would be successful, but, even if successful, that she would ultimately lose the case, and that she consented thereto. In support of the judgment of the trial court we must accept the testimony of the respondent on this matter and consider the effect of such abandonment, and whether or not the loss resulted therefrom. Respondent contends, and it is true, that the merits of a case ought not to be decided on a motion to dismiss. But it is proper for the court upon a motion to dismiss for lack of diligence in prosecution to take into consideration the fact that the delay may have been intentional and to secure an unfair advantage. In that view of the case it was proper for the trial court to consider the nature and character of the case and the nature of the proposed defense, and the probability or possibility of such defense being successful.

We hold that the judgment of dismissal in that case was proper. Was the applicant bound to bring a new action of foreclosure in order to have it formally adjudicated that her claim was barred, or in the hope that the defendant therein would not plead the statute? In this connection it may be noted that the respondent in relying upon two entirely inconsistent defenses: one, the statute of limitations, on which he claims that appellant's right of action against him accrued at the time of the first disobedience of the orders of his client in 1907 or 1908; and the other, that it never accrued, as, he contends, appellant was bound to await the result of a second foreclosure suit. Neither question is free from difficulty, and yet where the disobedience complained of consists in delay only, the cause of action cannot be said to arise until such delay has resulted in some injury, as it did when the court dismissed the case because of the delay. The question then is, What damage accrued to the appellant at the time of the dismissal of her suit to foreclose the mortgage? If we assume, as respondent contends we should, that there was a possibility that the defendant in the new foreclosure proceedings might not plead the statute of limitations and that, therefore, the suit might be successful, or if we assume that the cloud upon the record title, due to the recordation of the mortgage, was of some value, it does not follow that the appellant would have to wait until it was finally determined in court that these rights were valueless; for at the time her right of action accrued, she would be entitled to recover whatever damages she had then suffered. The measure of damages then accruing to the appellant would be the loss caused by the dismissal, which would be the amount that could have been recovered in foreclosure proceedings, less the actual value, if any, of the barred note and mortgage to the appellant. This value was to be determined by the trial court from the evidence on that subject before it.

Judgment and order reversed.

Melvin, J., and Victor E. Shaw, J., *pro tem.,* concurred.