FLEMING G. RAILEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81893.   Promulgated September 17, 1937.

*Douglas D. Felix, Esq.*, for the petitioner.
*P. A. Bayer, Esq.*, for the respondent.

OPINION.

MORRIS: It is contended by the petitioner, on the one hand, that he was the legal and equitable owner of the properties conveyed, or purported to have been conveyed, to Alra, Inc., by his warranty deed of April 27, 1932, and that, therefore, notwithstanding the bare record ownership was in Alra, Inc., he was, nevertheless, entitled to deduct taxes, insurance, repairs, and depreciation on those properties. The respondent contends, on the other hand, that these properties were not owned by the petitioner but by Alra, Inc., and that, therefore, it, and not he, should report the income therefrom and claim the deductions therefor.

Fully realizing, as we must in all cases where personal advantages are a factor, that the petitioner, had the contemplated emergency actually existed, that is, had the corporate entity become necessary as a shield against judgment creditors and in the defense of his properties, would just as vehemently have asserted the validity of the corporation and its ownership of the properties transferred by his warranty deed of April 27, 1932, as he now urges contrariwise, we can not too lightly seize upon technicalities—such as the absence of activity, no formal issuance of stock, the failure of stockholders to exist of record or to hold formal meetings, and the like—in our determination of whether or not he is entitled to the deductions claimed. In such a case the general rule that substance and not form should prevail in the adjudication of tax questions (*First Seattle Dexter Horton National Bank* v. *Commissioner*, 77 Fed. (2d) 45) should be strictly adhered to.

The first and principal argument advanced by the petitioner is that under the laws of the State of Florida delivery of the deed by the grantor and its acceptance by the grantee are essential factors to the conveyance of title to real property, citing *Parken* v. *Safford*, 48 Fla. 290; 37 So. 567. This we concede. But, the general rule is that the filing of a deed for recordation by the grantor is prima facie

a delivery of the deed to the grantee and acceptance by him where a beneficial interest is conferred upon the grantee. The rule is stated by the Supreme Court of Florida in *Ellis* v. *Clark*, 39 Fla. 714; 23 So. 410, as follows:

* * * The delivery of a deed by the grantor, and its acceptance by the grantee, are essential to convey title; and when a grantor causes an acknowledged deed, conferring substantial benefits on the grantee, to be recorded, there can be no doubt that it will afford prima facie evidence, and even strong presumptive evidence, of a delivery to, and acceptance by, the grantee, but such presumption can be overcome by evidence that no delivery in fact was intended and none made. At least, the clear weight of authority holds that to be the correct rule. Webb, Record Titles (section 144) says: "As a general rule, delivery of a deed or other instrument is essential to its valid registration, for the reason that until delivery the deed is incomplete, and its record cannot impart constructive notice of a change of ownership that has not occurred. * * * The recording of a deed is not equivalent to delivery, but, like possession of it, is prima facie evidence of that fact, subject to be overcome by contrary proof." The following authorities sustain this view: *Metcalfe* v. *Brandon*, 60 Miss. 685; *Younge* v. *Guilbeau*, 3 Wall. 636; *Leppoc* v. *Bank*, 32 Md. 136; *Hawkes* v. *Pipe*, 105 Mass. 560; *Samson* v. *Thornton*, 3 Metc. (Mass.) 275; *Gilbert* v. *Insurance Co.*, 23 Wend. 43; *Cravens* v. *Rossiter*, 116 Mo. 338, 22 S. W. 736, s. c. 38 Am. St. Rep. 606, and note; *Alexander* v. *Alexander*, 71 Ala. 295; Devl. Deeds, § 292.

There is no evidence whatsoever indicating any change in the circumstances between the time Alra, Inc., was organized and the time when it was finally dissolved from which we might reasonably deduce that the petitioner's intention and plan had been altered or abandoned. In fact just the contrary appears to be admitted by a sworn statement on the part of the petitioner saying that "In the spring of 1935, the emergency for which the corporation was formed having passed, I exercised my control over the corporation and caused an organization meeting to be held and the legal title to all property involved be reconveyed to me."

While the petitioner's brother, as a witness, so testified, as did the petitioner himself, that there was no delivery of the deed, we find ourselves unwilling to attach full significance to the former's testimony for the reason that circumstances clearly of record convince us that he was in no position to know with reasonable certainty what had happened to the deed after its preparation by him and delivery to his brother for examination. When asked by counsel for the respondent, on cross-examination, how he happened to know that the deed was never delivered, he said that he turned it over to his brother for examination, that his brother was to return it to him if they were to proceed with the corporation, and after that, "I don't know what else happened relative to that deed." The petitioner, when asked what he meant when he testified that there was no delivery of the deed, said that after its recordation he put it in the

files of his safe and that he forgot all about having the deed until the question of title later arose. What he failed to tell us was whether or not those files were intended by him as, or were in fact, the depository for corporate documents of Alra, in which event the mere placing of the deed therein, by him, as grantor, would constitute a delivery through him, either as agent for the corporation or as one of its directors, to the corporation itself.

The really vital defect in the proof to overcome the presumptive correctness of the respondent's determination, also the presumption to which we have referred, is the fact that the deed itself was executed with all the formalities of law and, notwithstanding that two witnesses affixed their signatures thereto beneath the legal terminology "Signed, sealed and delivered in the presence of us", neither of them was called upon to testify at this proceeding. It seems to us that for the petitioner to prevail in so vitally varying the terms of that formal document it should be shown by these witnesses that that they did not mean what they said when they placed their signatures thereon, attesting the fact that the deed had not only been signed and sealed in their presence, but that it was actually "delivered."

The evidence does not, therefore, refute the presumption of "delivery" and acceptance.

A further argument of the petitioner is that even assuming the corporation had title to the properties by reason of recordation, the petitioner, nevertheless, should be entitled to the deductions because the corporation was formed solely for the purpose of holding the title; it issued no stock; had no paid-in capital; held no regular corporate meetings; paid no dividends; and exercised none of the rights or privileges of corporate ownership. Having held that title to the properties in controversy vested in the corporation and having found as a fact that those properties had a value greatly in excess of $500, we, of course, can not agree with the petitioner that it had no paid-in capital, irrespective of the fact that it issued no stock therefor, which has repeatedly been held unnecessary to the existence of a valid stock ownership. *Federal Grain Corporation*, 18 B. T. A. 242. The State of Florida having breathed life into the corporation, and it having complied with the laws of that state giving it the right to transact business under its charter, even though it did nothing more than receive the properties which the petitioner conveyed to it, as we have found, by deed of April 27, 1932, a separate entity exists for tax purposes, be it *de jure* or *de facto*, it matters not, which will not be ignored except under unusual circumstances. *Dalton* v. *Bowers*, 287 U. S. 404; *Burnet* v. *Clark*, 287 U. S. 410; *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415. As we have said heretofore

(*Broadway Strand Theatre Co.*, 12 B. T. A. 1052), "Where a corporate cloak is resorted to for its business benefits the burdens, if any, must also be assumed."

We are, therefore, of the opinion that the deductions claimed by the petitioner were correctly disallowed by the respondent.

*Judgment will be entered under Rule 50.*