[Civ. Nos. 25729, 25942.   Second Dist., Div. Three.   July 25, 1962.]

MERCHANTS FIRE ASSURANCE CORPORATION OF NEW YORK, Plaintiff and Appellant, v. RETAIL CREDIT COMPANY, INC., Defendant and Respondent.

(Two Cases.)

Irving L. Halpern, Long & Levit and David C. Bogert for Plaintiff and Appellant.

Cosgrove, Cramer, Rindge & Barnum and John N. Cramer for Defendant and Respondent.

FILES, J.—These are appeals in two cases between the same parties. The first action was dismissed after a separate trial on the statute of limitations. The second action resulted in an interlocutory judgment of abatement because of the pendency of the other action. Plaintiff has appealed from both judgments.

### The First Appeal

The following facts were assumed to be true for the purpose of the special trial:

Plaintiff is in the business of insuring property against

various kinds of physical damage. Defendant is in the business of furnishing information, for a price, to insurance companies, among others. On June 27, 1957, plaintiff issued a policy insuring a certain home against all physical loss. On August 28 plaintiff ordered a report from defendant for the purpose of evaluating the risk and to determine whether to cancel the policy. On September 4, 1957, defendant furnished the report. Among other things, this report stated: "The house does not stand on filled ground." Actually the house did stand on filled ground. Plaintiff relied upon the report and kept the insurance in force. In April 1958 a landslide of the fill occurred, causing damage to the house. On April 8, 1958, the loss was reported and on May 27, 1958, the plaintiff for the first time learned that the house had been built on filled ground. On November 18, 1958, plaintiff entered into a compromise settlement with its insured, whereby plaintiff paid out $18,750 for the loss. Plaintiff also incurred expenses amounting to $2,309.44 in adjusting the claim, including engineering and attorney's fees.

This action was filed May 23, 1960. The pleading on which plaintiff went to trial is designated "First Amended Complaint for Negligent Misrepresentation, and Breach of Contract." It is in two counts.      The first count alleges that defendant furnished a false report, that defendant made the false statements "negligently, in that it had no reasonable grounds for believing them to be true." It is further alleged that plaintiff believed the statements in the report and relied on them to its damage. The second count alleged that the report was furnished pursuant to a "written unilateral contract embodied in the following documents," the documents then being listed. It was alleged that the report was negligently prepared, contained false statements, and thereby constituted a breach of the contract.

The answer of the defendant pleaded several defenses, one being that the action was barred by limitations as set forth in subdivision 1 of section 339 of the Code of Civil Procedure. No other statute of limitations was pleaded. A separate trial of the issue of limitations was held. A stipulation of facts was filed and various documents were received in evidence. The trial court then made findings of fact and concluded that the first count sounded in negligence, that neither cause of action was founded upon an instrument in writing, and that both causes are barred by Code of Civil Procedure, section

339, subdivision 1, because not brought within two years. Judgment was entered dismissing the action.

(a) *The Cause did not Accrue within Two Years.*

As a general proposition the period of limitations starts to run when, under the applicable substantive law, the elements of the cause of action are complete. (See 1 Witkin, California Procedure, 614; 31 Cal.Jur.2d, Limitation of Actions, § 32.) In this case the breach of contract, if any, occurred when the report was delivered. The tort cause of action may not have arisen until the landslide, upon the theory that there is no cause of action in tort for nominal damages. (*Walker* v. *Pacific Indem. Co.*, 183 Cal.App.2d 513, 517 [6 Cal. Rptr. 924].) When the landslide occurred in April 1958 plaintiff became unconditionally liable to its assured for the amount of the physical damage to the assured's home. This supplied the element of damage which made the tort cause of action complete. This occurred more than two years prior to the commencement of the action.

Plaintiff argues that the period of limitations should run from discovery. It is true that there are a number of exceptional situations in which the period runs from discovery. (See cases collected in 1 Witkin, California Procedure, 616.) Plaintiff fails to bring itself within any of the exceptions. *Aced* v. *Hobbs-Sesack Plumbing Co.*, 55 Cal.2d 573 [12 Cal. Rptr. 257, 360 P.2d 897], involved a warranty in connection with the sale and installation of certain tubing. The Supreme Court construed the warranty to be prospective in character, and not breached until the tubing failed. In the present case plaintiff did not allege that defendant made any promise which could be construed as a prospective warranty. The alleged promise was to furnish a report of a certain quality, and the alleged breach was the furnishing of the report which was delivered on September 4, 1957. This report, unlike the tubing, did not deteriorate later. It was not claimed that the defendant made any promise or warranty concerning the house, for the alleged contract related only to the quality of the report.

The medical malpractice cases cited by plaintiff are not analogous. In this case there is no continuing fiduciary relationship nor any concealment of acts done, which often suspend the running of the statute in the malpractice cases. Thus, for example, in *Stafford* v. *Shultz*, 42 Cal.2d 767 [270 P.2d 1], relied upon by plaintiff here, the Supreme Court

held the first cause of action in the complaint was barred because the statutory period had run from the date of the malpractice (42 Cal.2d at p. 775) but held that the second cause of action was not barred, where plaintiff added allegations charging defendants with fraudulent concealment of his condition and falsely representing that it was reasonable to expect a cure. That case does not support plaintiff's hypothesis that ignorance alone will toll the period of limitations, either for negligence or for breach of contract.

Plaintiff also contends that the cause of action did not arise until plaintiff paid the damages to its assured, citing *Walker* v. *Pacific Indem. Co.*, 183 Cal.App.2d 513 [6 Cal.Rptr. 924]. In that case the defendant insurance broker had agreed to procure for Merrill a liability insurance policy with limits up to $50,000. Through negligence he procured a $15,000 policy. Merrill was involved in an accident, was sued, and eventually suffered a $35,000 judgment taken against him, for which he had only $15,000 insurance coverage. When the broker was sued for his negligence, the statute of limitations was held to run from the date when the $35,000 verdict was returned against Merrill. The reason was that until the jury came in against Merrill, it could not be determined that Merrill was damaged at all. Had the verdict not exceeded $15,000, Merrill would not have been damaged by the broker's negligence and would have had no cause of action against the broker. The reasoning of the *Walker* case, applied here, supports the conclusion that the cause of action arose at the time of the landslide, because that was the event which made it certain that plaintiff would take a loss.

(b) *The Action is not Founded on an Instrument in Writing.*

At the conclusion of the trial the court made the following finding: "The documents in evidence do not constitute or express any obligation, the nonperformance of which plaintiff alleges in either the first or second cause of action of the first amended complaint."

The documents in evidence included the following:

(1) A document dated July 25, 1929, headed, "Protective Agreement." This was in the form of a printed letter addressed to defendant and signed by plaintiff. By its terms plaintiff agreed that the reports furnished would be treated in confidence; that neither the verity nor accuracy of informa-

tion is guaranteed; that plaintiff agrees to release defendant from any claim for any loss that may occur to it through reports furnished.

(2) Printed letters and folders issued by defendant explaining the necessity of keeping reports confidential to avoid legal hazards.

(3) Plaintiff's written request for a report on the property involved here.

(4) The report.

This evidence fully supports the trial court's finding. Nothing in any of these documents constitutes a promise to deliver a report, or a promise that reports will be of a particular quality. The only reasonable conclusion is that either this was a unilateral transaction, i.e., defendant did an act in exchange for plaintiff's promise to pay (see Rest., Contracts, § 12), or else the promise of defendant was made orally as a part of a bilateral transaction.

Plaintiff would read out of context a portion of what is written in one of the folders on confidential handling of reports. The language there is: "It is not possible to guarantee reports inasmuch as information in them is obtained from fallible human sources. However, a high degree of accuracy is maintained."

Plaintiff argues that the last eight words of that warning constitute a part of a contract to produce accurate reports. In view of the context, the trial judge was entirely justified in concluding that this was not intended as a written contract warranting accuracy in every report.

Such decisions as *Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654 [328 P.2d 198], do not assist plaintiff. The defendant in that case had obligated itself to perform a written insurance contract. The particular duty which was breached was said to be the implied covenant of good faith, which the Supreme Court said was as much a part of the written instrument as if it were written out. Hence the four-year limitation for written contracts applied. The difference in the present case is that there is here no written contract which, even by implication, created the duty which plaintiff alleges to have been breached.

(c) *There was no Abuse of Discretion in Refusing to Reopen.*

Three days after the matter had been submitted to the trial court plaintiff's counsel moved to reopen. He stated that he

had found in his office file two documents which purported to be brochures issued by defendant and a printed letter addressed to "Fire Insurance Executives." Plaintiff contended that these documents were further evidence of the written obligation alleged in the complaint. However it had no proof that defendant had sent these documents to plaintiff, and thus an indefinite delay would have been necessary before plaintiff could lay a proper foundation. Plaintiff then asked in the alternative for a continuance or for a mistrial. All of these motions were denied.

Plaintiff had answered "Ready" when the case was called for trial, and in support of its motions made after submission it made no showing which the trial judge was bound to recognize. More important, the documents which it offered, and which were marked for identification and brought up with the record on appeal, add nothing to the case. If received in evidence they would no more prove a written contract than the documents previously relied upon.

(d) *Code of Civil Procedure, section 338, subdivision 4, Applies.*

In order to present the facts for the trial on the statute of limitations the parties filed a written "stipulation as to facts." The document concluded with this statement: "The facts alleged in the first cause of action of the first amended complaint do not allege a cause of action for fraud within the meaning of Section 338 ([subd.] 4) of the Code of Civil Procedure."

Section 338, subdivision 4, provides that an action on the ground of fraud may be brought within three years.

The record does not show why the parties included this statement. It is not a statement of fact, but a conclusion as to one of the issues of law before the court—a clearly erroneous conclusion, as plaintiff now recognizes. The first count in the amended complaint alleges that defendant furnished a report containing false statements, and that defendant had no reasonable grounds for believing them to be true; that plaintiff believed and acted in reliance and sustained damage.

Civil Code, section 1710, subdivision 2, defines "deceit" to include "The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." In view of this code section, *scienter*, or knowledge of actual falsity on the part of defendant, is not

an essential element of every cause of action for fraud. (*Gagne* v. *Bertran*, 43 Cal.2d 481, 487 [275 P.2d 15].)

Counsel for plaintiff now explains that he only intended by this stipulation to absolve defendant of willful, as distinguished from negligent, misrepresentation, and that he never intended gratuitously to stipulate his client out of court.

■ However this may be, the pleading speaks for itself and its interpretation is the business of the court. ■ It is well settled that "When a particular legal conclusion follows from a given state of facts, no stipulation of counsel can prevent the court from so declaring it." (*San Francisco Lumber Co.* v. *Bibb*, 139 Cal. 325, 326 [72 P. 964]. Accord: *People* v. *Jones*, 6 Cal.2d 554 [59 P.2d 89] ; *Owen* v. *Herzihoff*, 2 Cal.App. 622 [84 P. 274] ; *People* v. *Singh*, 121 Cal.App. 107, 111 [8 P.2d 898] ; *Valdez* v. *Taylor etc. Co.*, 129 Cal. App.2d 810, 819 [278 P.2d 91] ; *Duncan* v. *Garrett*, 176 Cal. App.2d 291, 294 [1 Cal.Rptr. 459].)

*Warburton* v. *Kieferle*, 135 Cal.App.2d 278, 286 [287 P.2d 1], is not in conflict. In that case the stipulation was treated not as a stipulation of law but as a binding agreement that a particular judgment be entered. Plaintiff here made it clear to the trial judge that it was not consenting to a dismissal, even though it was mistaken as to the applicable law.

■ The first cause of action is not barred by Code of Civil Procedure, section 339, subdivision 1, as pleaded in the answer. It is an action for relief on the ground of fraud, and thus may be brought within 3 years under Code of Civil Procedure, section 338, subdivision 4. The judgment dismissing the action must be reversed.

## THE SECOND APPEAL

Immediately following the dismissal of the first action plaintiff filed a second action. The complaint, captioned "Complaint for Fraudulent Deceit and Breach of Written Contract," was in four counts. The first count was substantially the same as the first count of the former action, with some embellishment, and now using the words "fraud and deceit" to characterize defendant's conduct. The second count alleged that on August 28, 1957, the parties entered into "a bilateral written contract" whereby defendant agreed to furnish a report and agreed that the information therein "would be accurate." The writing or writings constituting the alleged contract were not attached or otherwise identified. The third count was similar except it alleged that defendant "agreed

to use a high degree of accuracy.'' The fourth count alleged a written contract to use reasonable care in supplying the information. The false statements contained in the report dated September 4, 1957, are alleged to constitute the breach of each of these alleged contracts.

After defendant answered, a separate trial was had on defendant's plea of another action pending, pursuant to Code of Civil Procedure, section 597. At this trial the parties agreed that the court would take judicial notice of the entire record in the former case, including the reporter's transcript. No other evidence was offered. On this record the trial judge made findings of fact to the effect that each cause of action in the two cases arose out of the same facts and transaction and that they are based upon the same subject matter. The court thereupon gave an interlocutory judgment abating the second action pending final determination of the first case. Plaintiff has appealed from that interlocutory judgment.

It is clear that plaintiff bases the second case upon exactly the same facts which it relied upon in the first case, changing only the averments as to the legal effect of these facts. In pleading a written contract in the second action plaintiff characterizes the writings differently, but neither in the pleading nor in the argument does plaintiff refer to any writings except the ones which were considered in the first case.

''It is clearly established that a party may not split up a single cause of action and make it the basis of separate suits, and in such case the first action may be pleaded in abatement of any subsequent suit on the same claim.'' (*Wulfjen* v. *Dolton,* 24 Cal.2d 891, 894 [151 P.2d 840].)

The cause of action is the obligation sought to be enforced, or the primary right which was involved. New legal theories do not make new causes of action. (*Panos* v. *Great Western Packing Co.,* 21 Cal.2d 636, 638 [134 P.2d 242]; *Eichler Homes* v. *Superior Court,* 55 Cal.2d 845, 847 [13 Cal. Rptr. 194, 361 P.2d 914].) The transaction, the acts done, the legal duties and the primary rights involved in the second case are the very same as in the former. The trial court properly abated the second case so long as the first remains pending.

The judgment in Number 25729 is reversed. The judgment in Number 25942 is affirmed.

Shinn, P. J., and Ford, J., concurred.