58 Cal.Rptr. 817]

[Civ. No. 23080.   First Dist., Div. Four.   May 15, 1967.]

RAYMOND J. ECKERT et al., Cross-complainants and Appellants, v. THOMAS E. SCHAAL, Cross-defendant and Respondent.

(1)

Janin, Morgan, Brenner & Freeman, Janin, Morgan & Brenner, Harry L. Freeman, Eric Olson and Richard G. Logan for Cross-complainants and Appellants.

Cushing, Cullinan, Hancock & Rothert and Harlow P. Rothert for Cross-defendant and Respondent.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

CHRISTIAN, J.—In a derivative suit brought to recover secret profits gained by appellants at the expense of the corporation which they had promoted and formed, appellants cross-complained against their former attorney for negligently giving advice which led them into a position of liability to the corporation and to its shareholders. Cross-defendant attorney demurred on the ground that the cause of action against him was barred by the two-year statute of limitations. (Code Civ. Proc., § 339, subd. 1.) We hold that the trial court correctly sustained the demurrer.

Put into narrative form, the pertinent allegations of the amended cross-complaint follow. In March 1962, appellants (the clients) became interested in trying to buy at a bargain price the Weber Ranch in Marin County. Respondent (the attorney) was engaged for the purpose of forming a joint venture among the clients, negotiating the purchase in behalf of the joint venture, and forming a corporation to issue shares to local residents and with the proceeds purchase the property from the joint venturing clients. The purchase of the property was arranged for $215,000, which the clients regarded as a bargain price. On March 28, 1962, the clients executed an agreement among themselves, drafted by the attorney, to sell the property to a corporation which the parties would form for that purchase, or complete the purchase themselves as equal owners.

The attorney advised his clients that they could lawfully realize a profit upon the resale of the property to a corporation promoted by them. Acting on instructions given in reliance on that advice, the attorney drafted a pre-incorporation subscription agreement which provided that the corporation would purchase the property for $319,800. The attorney advised his clients that they need not disclose to other subscribers the fact that they planned to make a profit of $104,800 in the transaction. In fact, the profit was disclosed to only one subscriber in response to his specific inquiry.

Articles of incorporation were filed with the Secretary of State on April 30, 1962. Title to the property was transferred to the corporation and on May 31, 1962, the clients received in exchange cash and corporate stock representing the agreed purchase price. Between June 7 and July 6, the corporation issued 218 shares of stock of which a major proportion were sold to persons other than the original promoters. On January 6, 1964, after various skirmishes not pertinent here, certain of the shareholders brought a derivative action to recover the

clients' secret profits. On August 24, 1964, the clients cross-complained against their attorney alleging his malpractice in advising them that they had no duty to disclose promoters' profits and seeking indemnity in the amount of their liability as established in the main action.

An amendment to the cross-complaint added an allegation that at the time of a shareholders' meeting on December 17, 1962, the attorney was still acting for his clients in a professional capacity and negligently failed to advise them of their continuing duty to disclose secret profits.

The attorney demurred, asserting that more than two years had elapsed from the negligent rendering of advice, and from the time the cause of action arose, to the filing of the cross-complaint. The demurrer further asserted that the allegations added to the cross-complaint by amendment do not show that a new cause of action arose on December 17, because the advice given that day was not acted upon by the clients and did not cause detriment to them. After sustaining the demurrer, the court entered judgment dismissing the cross-complaint.

On appeal, the clients assert that (1) the statute of limitations runs from the time an attorney's negligent advice causes actionable damage rather than from the time such advice was given and (2) in any event the attorney was guilty of negligence within two years of the filing of the cross-complaint. In their opening brief, appellants urged us to hold that by analogy to the rule applicable to medical malpractice actions the period of limitation does not commence to run until the client discovers or should have discovered the negligence of the attorney. That point has now been abandoned, appellants conceding that we are bound by the recent contrary decision of the California Supreme Court in *Alter* v. *Michael* (1966) 64 Cal.2d 480, 483 [50 Cal.Rptr. 553, 413 P.2d 153].

### Commencement of the Period of Limitation

■ Promoters, directors, and officers of corporations have a fiduciary duty to deal in good faith with or on behalf of the corporation's shareholders and pre-incorporation subscribers. (Corp. Code, § 820; *Tevis* v. *Beigel* (1957) 156 Cal.App.2d 8 [319 P.2d 98].) Suit may be brought by or on behalf of the corporation to recover secret profits. (Corp. Code, § 834; *Burt* v. *Irvine Co.* (1965) 237 Cal.App.2d 828, 851 [47 Cal.Rptr. 392].) If no stock certificates are outstanding, subscribers are "shareholders" to whom the fiduciary duty is owed. (Corp. Code, § 103; *Brown* v. *North Ventura Road Dev. Co.* (1963) 216 Cal.App.2d 227, 233 [30 Cal.Rptr. 568].)

Appellants in effect concede that under these principles they are liable to the other shareholders and subscribers, and allege that they were led into this position by their attorney's erroneous advice, negligently given, that they need not disclose the secret profit. ██ The elements of a cause of action for malpractice arising out of legal advice negligently given are: (1) the existence of the attorney-client relationship; (2) the negligent giving of advice in the course of that relationship; (3) change of position on the part of the client in reliance on that advice; (4) the suffering of loss and injury as a direct and proximate result of the client's change of position. (*Modica* v. *Crist* (1954) 129 Cal.App.2d 144, 146 [276 P.2d 614].)

██ It is generally held that the period of limitation applicable to any class of action commences when the cause of action is complete. (*Merchants Fire Assur. Corp.* v. *Retail Credit Co., Inc.* (1962) 206 Cal.App.2d 55, 58 [23 Cal.Rptr. 544].) It is clear that the attorney-client relationship arose, advice was negligently given, and the clients changed their position in reliance on that advice, all more than two years before the filing of the cross-complaint. The crucial question, therefore, is when loss and injury was suffered. Appellants contend that no damage was sustained until the shareholders' derivative suit was filed against them. Respondent maintains that damage occurred when the clients fell under the burden of liability to the corporation, and other persons interested in it, by selling land to the corporation without disclosing their secret profit. That liability attached not later than July 6, 1962, by which time other shareholders had subscribed for and received shares in the corporation. Respondent also points out that as soon as the tainted transaction was completed the clients were deprived of any expectation of selling the property to anyone else and thereby realizing a profit. This is because the corporation was entitled to keep the property and compel the promoters to disgorge their entire profit.

██ The general rule in the United States is that ". . . in the absence of fraudulent concealment, where an attorney at law is guilty of negligence or breach of duty in performing services for his client, the client's cause of action accrues and the statute begins to run at the time when the negligence or breach of duty occurs, not at the time when it is discovered or actual damage results or is fully ascertained; . . ." (54 C.J.S. § 135, subd. c, p. 57.) The California decisions conform to that statement. In *Lattin* v. *Gillette* (1892) 95 Cal. 317, 319

[30 P. 545, 29 Am.St.Rep. 115], contentions closely resembling those advanced in the present case were rejected. The court stated: ''Whether the negligence out of which the cause of action arises is the breach of an implied contract, or the affirmative disregard of some positive duty, is immaterial. In either case, the liability arises immediately upon such breach of contract or disregard of duty, and an action to recover the damages which are the measure of such liability may be immediately maintained. The right to maintain the action is distinguished from the measure of damages, and although the entire damage resulting from such negligence may not have been sustained, or the fact that the negligence occurred may not have been known until the right of recovery is barred, yet the time within which an action may be brought is not thereby prolonged.'' (Also see *Fazio* v. *Hayhurst* (1966) 247 Cal. App.2d 200, 203 [55 Cal.Rptr. 370]; *Shelly* v. *Hansen* (1966) 244 Cal.App.2d 210, 213 [53 Cal.Rptr. 20]; *Bustamante* v. *Haet* (1963) 222 Cal.App.2d 413 [35 Cal.Rptr. 176]; *DeGarmo* v. *Luther T. Mayo, Inc.* (1935) 4 Cal.App.2d 604-606 [41 P.2d 366].) We cannot depart from a construction of Code of Civil Procedure section 339, subdivision 1, that has been so long established and so frequently applied.

Appellants rely heavily upon *Lally* v. *Kuster* (1918) 177 Cal. 783, 791 [171 P. 961], where the defendant attorney delayed in prosecuting an action on behalf of the client until the action was dismissed for lack of prosecution. The Supreme Court held that ''where the disobedience complained of consists in delay only, the cause of action cannot be said to arise until such delay has resulted in some injury, as it did when the court dismissed the case because of the delay.'' But the *Lally* case, involving only delay in following the client's instructions, is distinguishable from cases which involve negligently given advice. (See *Griffith* v. *Zavlaris* (1963) 215 Cal.App.2d 826, 829 [30 Cal.Rptr. 517].) In the former case the attorney could have prevented liability from attaching by proceeding in accordance with the client's instructions at any time up to the dismissal of the action for failure to prosecute. In the present case, once outsiders had subscribed to shares, liability attached to the clients for their breach of fiduciary duty, and nothing the attorney did thereafter could relieve them of that burden.

Appellants also cite *Walker* v. *Pacific Indem. Co.* (1960) 183 Cal.App.2d 513 [6 Cal.Rptr. 924], in which an insurance

broker negligently procured the insured's coverage in the amount of $15,000 instead of $50,000 as the insured desired. The court stated that since the smaller policy obliged the insurance company to defend the insured against any suit brought against him, there was no injury to the insured until his liability was fixed at an amount exceeding $15,000. Before that time there was no recoverable loss, but only the possibility of loss beyond the amount of coverage procured by the broker. The policy being merely an agreement of indemnity, the insured could not bring an action even for nominal damages against the broker until there was loss to be indemnified. Among other insurance cases following the same reasoning are *Critz* v. *Farmers Ins. Group* (1964) 230 Cal. App.2d 788, 799 [41 Cal.Rptr. 401]; *Merchants Fire Assur. Corp.* v. *Retail Credit Co., Inc.* (1962) 206 Cal.App.2d 55, 59 [23 Cal.Rptr. 544]. The *Walker* decision expressly distinguishes the legal malpractice action with the observation that, where a lawyer's breach of duty results in legal proceedings against his client and the client later sues the attorney, ''the intervening proceedings served to make clear the measure of the loss, but a loss sufficiently substantial to support an action accrued when the duty was breached.'' (183 Cal.App.2d at 518; also see *DeGarmo* v. *Luther T. Mayo, Inc., supra,* 4 Cal.App.2d 604.)

In the present case, the clients unlawfully took profits on May 31, 1962, when they received cash and stock in exchange for the property. Actionable wrongs to the subscribers occurred no later than June 7 and July 6, 1962, when the original shares were issued. Since the cross-complaint was filed on August 24, 1964, that cause of action was barred by the statute.

DOES THE AMENDMENT TO THE CROSS-COMPLAINT
ALLEGE ACTIONABLE NEGLIGENCE WITHIN TWO
YEARS PRIOR TO FILING THE CROSS-COMPLAINT?

The cross-complaint was amended to allege that respondent continued to act as attorney for appellants at the first meeting of the shareholders of the corporation on December 17, 1962, and that at this meeting respondent failed to advise appellants of their duty to make disclosure. Appellants advance the theory that the events of December 17 did not give rise to a new cause of action but indicate that the attorney's wrongful conduct was not completed until then because he had been retained to carry out an entire plan to realize

profit in a certain manner, a plan which was not completed until that moment. Appellants also assert that the shareholders could have ratified the secret profit taking at the first meeting, thereby relieving them of liability. Here appellants rely principally upon *Fazio* v. *Hayhurst, supra,* 247 Cal.App. 2d 200. In that case the plaintiff retained counsel to represent her in regard to her community property interest in the estate of her deceased husband. Upon advice negligently given, the client elected to take under the will rather than assert her community interest. More than two years elapsed from the exercise of the election to the filing of a malpractice action. The court of appeal held that, since the initial election was probably revocable and there was a continuing relationship between attorney and client which did not result in damage to the client until her election became irrevocable upon final distribution of the estate within the two-year period, the malpractice action was not barred. We distinguish the *Fazio* decision on the ground that in the present case the clients were damaged when they breached their fiduciary duty to the corporation. Even though the shareholders might have ratified the taking of profits at the first shareholders' meeting (which would have been against their financial interest as they later demonstrated by suing to recover profits), where the wrong consists of wasting corporate assets, it cannot be ratified without the concurrence of every shareholder. (*Burt* v. *Irvine Co., supra,* 237 Cal.App.2d 828, 863; *Kennerson* v. *Burbank Amusement Co.* (1953) 120 Cal.App.2d 157, 171-172 [260 P.2d 823].) In the *Fazio* case, revocation of the ill-advised election to take under the will was an act within the client's control which would have benefited her. Here, ratification would have required the concurrence, against their interest, of numerous third parties not within the clients' control.

The judgment of dismissal is affirmed.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied June 14, 1967, and appellants' petition for a hearing by the Supreme Court was denied July 12, 1967. Peters, J., was of the opinion that the petition should be granted.