THOS. E. BONE AND VERONICA S. BONE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

THOS. E. BONE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3750–67, 3751–67. Filed September 8, 1969.

Thos. E. Bone, pro se.
*Joel A. Sharon*, for the respondent.

---

914

916

OPINION

On his tax returns for 1964 and 1965, the petitioner claimed deductions for losses arising out of the development of citrus acreage on the theory that such losses were incurred by TBC as an "electing small business corporation" described in sections 1371–1378. Now, he contends that the losses arising out of the citrus acreage operation which occurred prior to October 28, 1964, were incurred by a partnership of which he was a member, and that losses occurring thereafter were incurred by TBC and are deductible by him by reason of TBC's valid subchapter S election. His present position is based on the proposition that TBC could not and did not acquire its assets and begin business until it received permission to issue stock, and that it could not have filed a valid subchapter S election until its stock was issued.

Fundamental to the petitioner's various contentions is the question when did TBC acquire assets and begin doing business. There is no doubt that under California law TBC came into existence as a corporation on August 16, 1963, the day its articles of incorporation were filed with the California secretary of state, and thereafter functioned as such. Cal. Corp. Code secs. 300, 308, 313 (West 1955). It is not a prerequisite to corporate existence under California law that there be shares of stock issued or outstanding. *Brodsky* v. *Seaboard Realty Co.*, 206 Cal. App. 2d 504, 24 Cal. Rptr. 61 (1962) ; *J. W. Williams Co.* v. *Leong Sue Ah Quin*, 44 Cal. App. 296, 186 P. 401 (1919). The same conclusion obtains for tax purposes. TBC's failure to issue stock certificates until October 1964 does not affect the reality of its existence on and after August 16, 1963. *Fleming G. Railey*, 36 B.T.A. 543 (1937). TBC was formed for a business purpose, and we are not justified in disregarding its existence. *Moline Properties* v. *Commissioner*, 319 U.S. 436, 438 (1943) ; *Ernest L. Rink*, 51 T.C. 746 (1969).

The evidence clearly indicates that TBC acquired assets and was engaged in business long before the issuance of the stock of the petitioner and Sidney. The petitioner's principal argument on this point is that the land itself, the basis of the business operation, was not effectively transferred to TBC prior to October 28, 1964. He contends that his offer to transfer the land to the corporation was conditioned on the issuance to him of the agreed-upon amount of stock and that the transfer could not have taken place prior to such issuance or at least authorization therefor by the California commissioner of corporations. However, in point of fact, the petitioner did transfer the land to TBC on October 7, 1963, by a recorded deed, and thereafter the corporation,

with the petitioner's approval—indeed, at his behest—paid taxes thereon and made substantial expenditures with respect thereto. In the sale and leaseback arrangements with Mr. Snyder, TBC dealt with the citrus property as its own. Furthermore, although the petitioner now contends that the property was not transferred to TBC until October of 1964, he previously thought and acted differently. On the State tax return of TBC, signed by the petitioner, the property was treated as an asset of TBC. On the Federal tax return of TBC for the period January 1 through October 31, 1964, the property and the business were reported as belonging to TBC, and in the petitioner's individual Federal tax return for 1964, he treated the business as belonging to TBC. Under these circumstances, we need not consider whether the transfer was in pursuance of the petitioner's original contract with the corporation or in modification of it; the point is that the corporation acquired the property in October 1963.

In all other respects, the corporation functioned as any other corporation does: It maintained a bank account and books and records separate from those of the petitioner and Sidney; it hired labor, paid taxes and expenses, made improvements to its property, arranged financing, and, generally, directed its efforts toward the development of a profit-making capability.

On the basis of these facts, we find and hold that from at least October 7, 1963, the citrus acreage business was the business of the corporation and not of the petitioner and Sidney as a partnership. Accordingly, the petitioner is not entitled to deduct as partnership losses any losses incurred in the citrus business after that date. *Ernest H. Weigman*, 47 T.C. 596 (1967), affirmed per curiam 400 F. 2d 584 (C.A. 9, 1968).

The next question is whether TBC's election under section 1372 was valid. Section 1372(c)(1) provides:

An election under subsection (a) may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any time during the month preceding such first month. * * *

As we said in *William Pestcoe*, 40 T.C. 195, 198 (1963) : "sections 1372(c)(1) and 1372(c)(2) are both demanding and explicit. There is no * * * provision for leniency with respect to the filing of elections under subchapter S." See also *Joseph W. Feldman*, 47 T.C. 329 (1966) ; *Simons* v. *United States*, 208 F. Supp. 744 (D. Conn. 1962). However, in applying this requirement, it is necessary to determine when the taxable year of TBC began and when, therefore, the time for making the election began to run. In this connection, the Income Tax Regulations provide:

Sec. 1.1372-2 Manner and time for making election and filing shareholders' consent.

(b) *Time of making election*—(1) *Taxable years beginning on or after September 3, 1958.* * * * For purposes of this subparagraph [explaining the operation of sec. 1372(c)(1)], the first month of the taxable year of a new corporation does not begin until the corporation has shareholders or acquires assets or begins doing business, whichever is the first to occur.

We think such rule is reasonable as applied to the facts of this case. Since we have found that TBC acquired assets and began business no later than October 7, 1963, its first taxable year began no later than such date, and therefore, its election, filed on November 16, 1964, is clearly untimely with respect to its first taxable period ending August 31, 1964. Similarly, such election is untimely with respect to TBC's taxable year beginning September 1, 1964, and ending August 31, 1965. Accordingly, the petitioner may not deduct any part of the losses in question incurred by TBC in the operation of the citrus acreage business.

The petitioner appears to argue that a valid election could not have been filed prior to October 28, 1964, because until then TBC had no shareholders to make the consents required by section 1372(a). However, the petitioner and Sidney were shareholders prior to October 1964, because they had agreed to take stock in TBC. Their agreements constituted "subscriptions" to stock under California law (*Eckert* v. *Schaal*, 251 Cal. App. 2d 1, 58 Cal. Rptr. 817 (1967)); and where no stock shares are outstanding, a subscriber to stock is a shareholder. Cal. Corp. Code sec. 103 (West 1955); *Brown* v. *North Ventura Road Development Co.*, 216 Cal. App. 2d 227, 30 Cal. Rptr. 568 (1963). Consequently, the petitioner and Sidney were capable of filing effective consents to TBC's election prior to October 1964. Cf. *Alfred N. Hoffman*, 47 T.C. 218 (1966), affirmed per curiam 391 F. 2d 930 (C.A. 5, 1968).

The respondent advances a different reason why the petitioner's argument must fail. He observes that section 1.1372–3(c), Income Tax Regs., as amended March 9, 1964, provides a procedure whereby, *if a corporation makes a timely election*, an extension of time may be obtained for a shareholder to file his consent. A similar procedure was provided in Rev. Proc. 61–30, 1961–2 C.B. 568. Thus, even if there were some reason why the petitioner and Sidney could not file their consents prior to October 1964, such reason does not excuse the failure to file timely the election by TBC.

Accordingly,

*Decisions will be entered for the respondent.*