[Civ. No. 23473.   First Dist., Div. Three.   Jan. 26, 1968.]

JOHN W. YANDELL et al., Plaintiffs and Appellants, v. DANIEL W. BAKER, Defendant and Respondent.

Guidotti & Mellana, Aldo P. Guidotti and Charles A. Lee for Plaintiffs and Appellants.

Elke, Farella Braun & Martel, Jerome I. Braun and David H. Melnick for Defendant and Respondent.

BRAY, J.*—In this appeal by plaintiffs from summary judgment in favor of defendant Daniel W. Baker, the only question presented is whether, on the motion for summary judgment which was granted on the sole ground that plaintiffs' alleged cause of action was barred by the statute of limitations, any triable issues of fact were raised. We hold that there were not.

## Record

The action is one for malpractice and breach of contract for attorney's services against defendants Kasch, Lautze & Lautze, certified public accountants, and defendant Baker, an attorney at law. Plaintiffs John W. Yandell and Dorothy Yandell, husband and wife (hereinafter referred to as the Yandells) were the sole stockholders of Longridge Transportation Co., a corporation. About January 1962 the Yandells orally employed defendant Baker to review, recommend and carry out a tax program in conjunction with defendant accountants. The tax program recommended and carried out was the dissolution of Longridge, the distribution of its assets to the Yandells as stockholders, and the transfer by them of such assets at the fair market value to two newly-formed corporations, Yandell Truckaway, Inc., and Sierra Warehouse Corporation. Baker and defendant accountants represented that such tax program would provide the Yandells with long-term capital gain treatment of all the earned surplus of Longridge. The certificate of "Winding Up and Dissolution" of Longridge was filed with the Secretary of State June 11, 1962, and with the Alameda County Clerk June 14, 1962. The Internal Revenue Service took a dim view of the procedure and notified plaintiffs in July 1963 that it rejected plaintiffs' version of the tax program. On December 11, 1963, the Service notified the Yandells that they were required to make an additional tax payment of $32,000. Plaintiffs on December 10, 1964, filed this action for malpractice against all defendants, claiming damages in said sum of $32,000 and an additional sum of $80,000 which it is alleged they will sustain because of additional taxes.

Defendant Baker filed a notice of motion for summary judgment alleging, among other grounds, that as to him the cause of action was barred by the statute of limitations. (Code Civ. Proc., § 339, subd. 1.) Before the motion was heard, plaintiffs filed a first amended complaint. The motion was denied because of the existence of the amended complaint.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Thereupon defendant Baker filed a new motion for summary judgment on the same grounds.[1] The motion was granted and summary judgment in defendant Baker's favor entered. Plaintiffs on appeal contend that there was a triable issue of fact raised on the motion as to when the attorney's services ended and the statute of limitations started to run.

No triable issue of fact.

██ The granting of a summary judgment is proper where the affidavits clearly show that plaintiffs' action is barred by the statute of limitations. (See *Graham* v. *Bank of Cal.* (1961) 197 Cal.App.2d 438 [17 Cal.Rptr. 279]; *Reiner* v. *Hermann* (1947) 79 Cal.App.2d 543 [180 P.2d 385].) ██ It is well settled that the two-year period of section 339, subdivision 1 of the Code of Civil Procedure is the applicable period of limitation in attorney malpractice actions and that the statute in such actions begins to run from the time of the negligent act rather than from the time of discovery of the injury. (*Griffith* v. *Zavlaris* (1963) 215 Cal.App.2d 826 [30 Cal.Rptr. 517]; *Bustamente* v. *Haet* (1963) 222 Cal.App.2d 413 [35 Cal.Rptr. 176]; *Alter* v. *Michael* (1966) 64 Cal.2d 480 [50 Cal.Rptr. 553, 413 P.2d 153].) Thus, the date of the alleged negligent act or acts of Baker becomes of vital importance.

Likewise, the rules pertaining to summary judgments are well settled. ██ The purpose of the motion for summary judgment is to discover whether or not there are triable issues of fact. (*Somerville* v. *Providence Washington Indem. Co.* (1963) 218 Cal.App.2d 237, 244 [32 Cal.Rptr. 378].) ██ If the opposition affidavit sets up facts showing that there are triable issues of fact, such facts must be accepted as true and the motion denied. (*Id.*) ██ The procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods of determining issues of fact. (*Id.*) (*Hatch* v. *Bush* (1963) 215 Cal.App.2d 692, 701-702 [30 Cal.Rptr. 397, 13 A.L.R.3d 503].) ██ Affidavits of the moving party must be strictly construed and those of his opponent liberally construed. (*Somerville* v. *Providence Washington Indem. Co., supra.*) ██ The opposing affidavit must be accepted as true, and need not be composed wholly of strictly evidentiary facts. (*Eagle Oil & Refining Co.* v. *Pren-*

---

[1]Although other grounds were stated in the notice of motion for summary judgment, it seems conceded that the sole ground upon which the motion was granted was that section 339, subdivision 1 of the Code of Civil Procedure applies.

*tice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].)  ▉  The issue to be determined by the trial court in consideration of a motion for summary judgment is whether or not any facts have been presented which give rise to a triable issue or defense, and not to pass upon or determine the true facts in the case. (*Nini* v. *Culberg* (1960) 183 Cal.App.2d 657, 661 [7 Cal.Rptr. 146].)  ▉  Any doubts are to be resolved against the moving party. (*Family Service Agency of Santa Barbara* v. *Ames* (1958) 166 Cal.App.2d 344, 351 [333 P.2d 142].)

Having the above rules in mind, we examine the showing made by the parties on the motion for summary judgment.

The sole showing on the motion was the affidavit of defendant Baker which accompanied the motion and the declaration of plaintiffs Yandell in opposition to the motion. Defendant Baker's affidavit stated in pertinent part that in November 1961 he was consulted by plaintiffs and defendant accountants concerning certain tax problems of corporations owned and controlled by plaintiffs; that the accountants recommended that Longridge be liquidated and dissolved and that the proceeds from such liquidation be used to repay to other corporations moneys withdrawn therefrom by plaintiffs; that he was to review said recommendations and perform legal services in the winding up and liquidation of Longridge; that he performed legal services to that end, which were performed between November 17, 1961, and June 14, 1962, although his time records (copies of which were attached to the affidavit) indicate that some incidental services in connection with the completion and winding up and liquidation of Longridge may have been performed as late as August 9, 1962. No services were rendered by him in connection with the liquidation of Longridge subsequent to that date and "any alleged advice and counsel given by me in connection with the matters complained of in plaintiffs' complaint" was given prior to, and in no event later than June 14, 1962. The affidavit then discloses the chronology of the corporation's dissolution, the distribution of Longridge's assets, ending with the filing of a "Certificate of Winding Up and Dissolution of Longridge Transportation Co." with the Secretary of State June 11, 1962, and with the Alameda County Clerk on June 14 and the receipt through the accountants of a State Tax Clearance Certificate.

The declaration of plaintiffs Yandell states in pertinent part that in November 1961 the Yandells consulted defendant

Baker in their own behalf and that of Yandell Truckaway, Inc., Sierra Warehouse Corp., and Longridge Transportation Company with regard to financial and tax matters. Defendant Baker stated that he would study their financial situation to determine whether anything could be done to alleviate some of their tax problems. Between November 1961 and January 1962 plaintiffs orally retained defendant Baker to review their personal and corporate financial structure and situations and to consult with and advise the defendant accountants for the purpose of minimizing, where legally possible, plaintiffs' corporate and personal taxes. Defendant Baker agreed to give "counselling, advice and services with regard to these matters, as well as perform the necessary legal work and services in connection therewith."

Shortly thereafter, defendant Baker represented to plaintiffs that he had reviewed their tax situations, consulted with defendant accountants and, together with the latter, had concluded that it would be in declarants' best interests to dissolve Longridge, distribute its assets to the Yandells and then redistribute these assets to the other two corporations; that he would continue to review declarants' financial situation "in assisting and advising declarant and declarant's accountants in the handling of the dissolution and redistribution of the dissolved corporation's assets . . . until the conclusion of the above stated recommended tax program." That the tax program was not concluded until on or about December 11, 1963, when declarant was informed by the Internal Revenue Service that it had completed its examination of plaintiffs' books and concluded that the manner and method of dissolution and redistribution of corporate assets as directed by defendant Baker and the other defendants was a corporate reorganization and not a corporate dissolution; therefore, the transaction was taxed at ordinary income rates rather than capital gain rates. That, therefore, the date when declarants suffered damage from defendants' acts was December 11, 1963, and that no damage could have been sustained prior to that date.

A comparison of the Yandells' declaration and Baker's affidavit discloses no substantial conflict as to the facts. Both parties agree that Baker was, with the accountants, to advise plaintiffs concerning a method to obtain lower income taxes and to do the necessary legal work to carry out the plan decided upon. Baker's affidavit shows that his work

was completed not later than August 9, 1962.[2] Yandell's declaration nowhere denies this or states any acts performed by Baker subsequent to that date. Yandell does make the assertion that Baker was to assist "declarant and declarant's accountants in the handling of the . . . dissolved corporation's assets . . . until the conclusion of the above stated recommended tax program." Whether this means that Baker was to perform any acts after the dissolution of the corporation and the transfer of its assets does not appear. However, this is immaterial as the acts of negligence and malpractice, if any, occurred at the time of advising the tax program and the dissolving of the corporation. It was at that time that plaintiffs changed their position on the advice of defendant Baker. Once Longridge was dissolved and its assets were distributed, the liability for payment of ordinary income rates, rather than capital gains rates, arose and the damage was done—even though the amount of damage or liability could not be determined until the Internal Revenue Service acted later.

In *Eckert* v. *Schaal* (1967) 251 Cal.App.2d 1 [58 Cal. Rptr. 817], the attorney-defendant was employed to form a joint venture among the plaintiffs to purchase certain real property and then to convey it to a corporation to be formed. After the property was purchased the attorney advised the joint venturers that in turning the property over to the corporation they need not disclose to other subscribers to the stock of the corporation that they were making a secret profit. Certain of the stockholders brought a derivative action against the joint venturers to recover the secret profit. The latter filed a cross-complaint against the attorney for malpractice in misadvising them. The trial court sustained a demurrer to the cross-complaint on the ground that the statute of limitations had run as the advice was given more than two years prior to the filing of the cross-complaint and entered judgment on the cross-complaint in favor of the attorney.

On appeal, in affirming the action of the trial court, the reviewing court stated: "The general rule in the United States is that '. . . in the absence of fraudulent concealment, where an attorney at law is guilty of negligence or breach of duty in performing services for his client, the client's cause of action accrues and the statute begins to run at the time

<hr>

[2] The complaint herein was filed December 10, 1964, which would be approximately two years and four months after defendant Baker states his work ended.

when the negligence or breach of duty occurs, not at the time when it is discovered or actual damage results or is fully ascertained; . . .' (54 C.J.S. § 135, subd. c, p. 57.) The California decisions conform to that statement. In *Lattin* v. *Gillette* (1892) 95 Cal. 317, 319 [30 P. 545, 29 Am.St.Rep. 115], contentions closely resembling those advanced in the present case were rejected. The court stated: 'Whether the negligence out of which the cause of action arises is the breach of an implied contract, or the affirmative disregard of some positive duty, is immaterial. In either case, the liability arises immediately upon such breach of contract or disregard of duty, and an action to recover the damages which are the measure of such liability may be immediately maintained. The right to maintain the action is distinguished from the measure of damages, and although the entire damage resulting from such negligence may not have been sustained, or the fact that the negligence occurred may not have been known until the right of recovery is barred, yet the time within which an action may be brought is not thereby prolonged.' [Citations.]'' (Pp. 5-6.)

In making their declaration herein, apparently plaintiffs were acting under the impression that the statute of limitations began to run from the time of discovery of their injury, that is, when they received the notification from the Internal Revenue Service. Therefore, the thrust of their declaration was to show the date of the discovery of their injury rather than the date of the occurrence of their injury. As before stated, it is now well settled that in an action against an attorney for malpractice, the statute of limitations begins to run when the negligent act occurs. (*Alter* v. *Michael, supra* (1966) 64 Cal.2d 480, 483 [50 Cal.Rptr. 553, 413 P.2d 153]; *Eckert* v. *Schaal, supra.*)

The case of *Fazio* v. *Hayhurst* (1966) 247 Cal.App.2d 200 [55 Cal.Rptr. 370] is not in point. There the attorney for the estate advised the widow to take under the will of her deceased husband instead of her community rights. In determining the statute of limitations starting date in the malpractice action brought by her, the court pointed out ''The attorney, here, had a continuing relationship with his client, which did not result in any actual damage to her until such time as her election was acted upon,'' (p. 203) that is, until distribution, as the widow could have withdrawn her election at any time before distribution and it was the attorney's duty

to have advised her properly before he obtained the decree of distribution. Here, once the dissolution of Longridge occurred and its assets were distributed, it became too late to undo the damage.

Plaintiffs' closing brief states "that had defendant Baker performed his duty to review plaintiffs' tax matters and particularly to review the income tax return of plaintiffs Yandell filed in the year 1963 for the calendar year 1962, the damages they subsequently sustained in December of 1963 may well have been avoided." This statement, in effect, concedes that Baker rendered no service in connection with the income tax returns after the dissolution of Longridge and the transfer of the assets. Assuming that Baker's duty under the contract was to assist plaintiffs in trying to get the Internal Revenue Service's estimate of the taxes due from plaintiffs reduced or eliminated, his failure to do so might have been a breach of the contract, but could not have been negligence, nor would such fact change the starting date of the statute. Section 339, subdivision 1 of the Code of Civil Procedure applies to an action for breach of an oral contract and is a two-year statute.

In their brief in the trial court plaintiffs stated: "Without exception, the courts in the cited cases held that the period of limitations on actions for attorneys' malpractice commences to run on the date the negligent advice was given rather than from the date of the discovery thereof by the client. Plaintiffs do not dispute this point of law." Their opening brief on this appeal is to the same effect. Plaintiffs in their briefs point out the unfairness of such a rule which, in effect, starts the statute of limitations running before the client discovers, or is able to discover that the attorney's advice and action is wrong. In most cases, as in this, by the time he reasonably could discover the effect of the attorney's advice, the statute has run, precluding the client from any redress because of the attorney's negligence. However, the rule has been established, and we are required to follow the rule.[3] It can only be changed by the Supreme Court or the Legislature.

Plaintiffs make brief mention of a breach of contract cause of action. An examination of the amended complaint clearly

---

[3]In fraud cases, medical malpractice cases, and we have recently held in accountant's malpractice cases, the statute does not start to run until the injured party receives, or with reasonable diligence could have received, notice of the injury. There does not appear to be any good reason why a similar rule should not apply in attorney's malpractice cases.

shows that no such cause of action was attempted to be stated against defendant Baker.

The judgment is affirmed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied February 23, 1968, and appellants' petition for a hearing by the Supreme Court was denied March 20, 1968.