UNITED STATES of America, Plaintiff,

v.

Jennifer GUTTERMAN, as Administratrix c.t.a. of the Estate of David M. Schindler, deceased, et al., Defendants.

David M. SCHINDLER, Jr., Third-Party Plaintiff and Appellee,

v.

FARROW, CAHILL, KASWELL, SEGURA AND RADER, a legal co-partnership, et al., Third-Party Defendants and Appellants.

No. 81–4520.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1982.

Decided March 11, 1983.

H. Wayne Goodroe, Farrow, Schildhause & Wilson, Oakland, Cal., for plaintiff.

Warren G. Reid, Oakland, Cal., for defendants.

Before CHOY, SNEED and FARRIS, Circuit Judges.

CHOY, Circuit Judge:

The former law firm of Farrow, Cahill, Kaswell, Segura and Rader (Farrow, Cahill) appeals from the district court's judgment that Harold Farrow, one of its partners, committed malpractice by failing to file a federal estate tax return in a timely manner. Its principal contention on appeal is that the applicable California statute of limitation bars the malpractice claim. We agree and reverse.

## I. *Facts*

David M. Schindler died testate on April 26, 1970. The decedent's son, David M. Schindler, Jr., was appointed executor of his father's estate, and retained Farrow, Cahill for legal services in connection with the disposition of the estate. (As used hereinafter, "Schindler" will refer to David M. Schindler, Jr.) Farrow, Cahill filed the estate's federal estate tax return and made a payment of estate taxes on January 25, 1972, approximately six months late. On March 6, 1972, the IRS assessed a penalty against the estate in the amount of $4,595.46 plus interest. Schindler was personally notified on August 14, 1972, that a tax delinquency was then due, and that Farrow, Cahill's explanation for the late filing was not acceptable. Neither Schindler nor the estate paid the tax penalty.[1]

In March 1978, the United States brought suit to collect the unpaid tax penalty. Judgments were secured against both the estate and Schindler personally. In addition, the United States obtained a special estate tax lien on property transferred out of the estate. It was from the tax lien that the United States finally recovered its tax penalty.

On September 19, 1979, Schindler filed the third-party complaint now before us against Farrow, Cahill alleging legal malpractice for the late filing. Farrow, Cahill's motion for summary judgment on the ground that the third-party action was barred by the statute of limitation was denied by the district court, which held that Schindler's action did not accrue until the United States had secured judgment on the tax penalty. After a bench trial, judgment on the third-party claim was given in favor of Schindler.

## II. *Discussion*

Since the applicable law on Farrow, Cahill's statute-of-limitation defense is California law, we must apply the rule that the California Supreme Court is most likely to choose. *Commercial Union Insurance Co. v. Ford Motor Co.,* 640 F.2d 210, 212 (9th Cir.), cert. denied, 454 U.S. 858, 102 S.Ct. 310, 70 L.Ed.2d 154 (1981). Both sides agree that the applicable statute of limitation is Cal. Civ.Proc.Code § 339(1), which requires that suit be brought within two years of injury.

A cause of action for legal malpractice does not accrue in California until (1) "the client discovers, or should discover, the facts establishing the elements of his cause of action," *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 194, 491 P.2d 421, 433, 98 Cal.Rptr. 837, 849 (1971);[2] and (2) there is "appreciable and actual harm flowing from the attorney's negligent conduct," *Budd v. Nixen,* 6 Cal.3d 195, 201, 491 P.2d 433, 436, 98 Cal.Rptr. 849, 852 (1971). The question is solely when Schindler suffered "appreciable and actual harm," since Schindler had full knowledge of the late filing by August 1972, at the latest.

---

1. An estate executor is personally liable for the debts of the estate owed to the United States. 31 U.S.C. § 192.

2. By subsequent enactment, the California legislature has modified the *Neel* rule to require that legal malpractice must be discovered, and an action commenced, within four years of the injury. Cal.Civ.Proc.Code § 340.6.

██ The *Budd* rule stems from the simple proposition that a cause of action does not accrue until all the elements of the claim are present. Since actual damages are an essential part of a malpractice suit, a tort action cannot accrue until damage has been caused. *Budd, supra,* at 200, 491 P.2d at 436, 98 Cal.Rptr. at 852. The *Budd* court cautioned, however, that "only in the unusual case will the client discover his attorney's negligence without having suffered any consequential damage." *Id.* at 201, 491 P.2d at 437, 98 Cal.Rptr. at 853. In 1975, the California Supreme Court refined the *Budd* rule as follows:

> [A]lthough a right to recover nominal damages will not trigger the running of the period of limitation, the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period. Under present authority, *neither uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations.*

*Davies v. Krasna,* 14 Cal.3d 502, 514, 535 P.2d 1161, 1169, 121 Cal.Rptr. 705, 713 (1975) (emphasis added). The California Court of Appeal has held that a malpractice action accrues "when the error becomes irremediable and the impact of the injury occurs." *Southland Mechanical Constructors Corp. v. Nixen,* 119 Cal.App.3d 417, 432, 173 Cal.Rptr. 917, 925 (1981). *See also Bell v. Hummel and Pappas,* 136 Cal.App.3d 1009, 1016, 186 Cal.Rptr. 688, 694 (1982). Further, "It is not necessary that all or even the greater part of the damages have to occur before the cause of action arises." *Bell,* 136 Cal.App.3d at 1016, 186 Cal.Rptr. at 694.

██ Schindler first suffered actual and appreciable harm, at the latest, in August 1972 when the IRS assessed the tax penalty. The liability thereby incurred was irremediable. Liability for a tax assessment caused by a lawyer's malpractice is actual damage, since an enforceable obligation has come into existence. Our view that Schindler's cause of action accrued, at the latest, when the tax penalty was assessed is supported by cases from both California and other jurisdictions.

Two California cases are particularly instructive. In *Eckert v. Schaal,* 251 Cal. App.2d 1, 58 Cal.Rptr. 817 (1967), *overruled on other grounds, Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 182, 190 n. 29, 491 P.2d 421, 430 n. 29, 98 Cal.Rptr. 837, 846 n. 29 (1971), a lawyer had advised his clients that they could enter into certain corporate transactions without incurring liability. Later, after being sued in a derivative action, the clients sought recovery from the lawyer for his negligent advice. The court ruled that the action had accrued when liability had irrevocably attached to the actions of the clients, and not subsequently when the clients had actually been sued for their misdeeds. Even closer on point is *Yandell v. Baker,* 258 Cal.App.2d 308, 65 Cal.Rptr. 606 (1968), *overruled on other grounds, Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 190 n. 29, 491 P.2d 421, 430 n. 29, 98 Cal.Rptr. 837, 846 n. 29 (1971). In *Yandell,* former clients sued a lawyer for negligent advice that resulted in unnecessary tax liability. The court specifically addressed the question of when a lawyer's negligent tax practices causes damages, stating, "Once [the clients' corporation] was dissolved and its assets were distributed, the liability for payment of ordinary income rates, rather than capital gains rates, arose and *the damage was done—even though the amount of damage or liability could not be determined until the Internal Revenue Service acted later.*" 258 Cal.App.2d at 314, 65 Cal.Rptr. at 610 (emphasis added).[3]

---

**3.** *Yandell,* like *Eckert,* was overruled on another holding, specifically, that a cause of action accrues from the date all the elements of the action exist, regardless of whether the injured party is aware of the facts establishing a cause of action. This holding was overruled by the *Neel* decision that the statute of limitation for malpractice is tolled until the client discovers, or should have discovered, the facts constituting the cause of action.

An earlier California case, *L.B. Laboratories v. Mitchell,* 39 Cal.2d 56, 244 P.2d 385 (1952), allowed a malpractice recovery against a lawyer who had filed a late return. The client had compromised the resulting tax penalty with the IRS; no judgment had been rendered on the

Since the *Budd* court's definition of a completed cause of action for malpractice was expressly derived from a general hornbook on torts,[4] the opinions of courts outside California concerning when an action for malpractice accrues are instructive insofar as they adhere to the same general definition of what constitutes a claim for malpractice. A Maryland case cited by the *Budd* court, *Feldman v. Granger,* 255 Md. 288, 257 A.2d 421 (1969), is right on point. In *Feldman,* professional accountants, on behalf of their clients, had undertaken to notify the IRS that the clients' corporation would elect to be treated for tax purposes as a subchapter S corporation. However, the notice was sent one day late, resulting in a deficiency assessment of $25,428.06. The clients litigated the assessment in the United States Tax Court, where the assessment was eventually upheld. Subsequently, the clients filed suit against the accountants. In order for their claim to fall within Maryland's applicable limitation period, the clients maintained that the malpractice action did not accrue until final judgment of the Tax Court, arguing "it was not until this adjudication that their liability to the federal government for additional taxes had been positively established by the exhaustion of their administrative remedies." 257 A.2d at 423. The court rejected this argument, holding that harm was suffered as of the date of the tax assessment, if not before. *Id.* at 425. Similarly, in another case cited by the *Budd* court, it was held that an action for malpractice accrued as of the date of a tax assessment for the filing of a late tax return. *Atkins v. Crosland,* 417 S.W.2d 150 (Tex.1967). Finally, the Iowa Supreme Court in *Cameron v. Montgomery,* 225 N.W.2d 154 (Iowa 1975), held that a cause of action against a lawyer for late filing of an estate tax return accrued when the executors were assessed for the late filing. There is in *Cameron* the further implication that the cause of action would have accrued earlier had the estate executors known that the IRS would not excuse late filing of the tax returns.

On the other side of the argument, we have not found, nor have the parties cited, any case holding that a malpractice claim for negligent tax services does not accrue until a court judgment. Nor does it make policy sense to follow such a rule. It would allow clients such as Schindler to keep attorneys unsure of their legal exposure for years, despite the clients' full knowledge of the nature of their attorneys' acts, as well as the damage caused thereby. This runs directly counter to the legitimate interest in enforcing a statute of limitation. "Statutes of limitations are not disfavored in the law. To the contrary they are favored in the law because they promote desirable social ends and give security and stability to human affairs." *McGee v. Weinberg,* 97 Cal. App.3d 798, 804, 159 Cal.Rptr. 86, 90 (1979) (citation omitted).

## III. *Conclusion*

Since we conclude that the California Supreme Court, in light of its own precedent and that of other courts, would find that the statute of limitation for negligent tax services would begin to run no later than the date of the resulting tax assessment, we hold that Schindler's action does not fall within the limitation period.

REVERSED.

---

assessment. The out-of-pocket loss itself was undoubtedly sufficient to satisfy the damage element of the tort. *See Budd,* 6 Cal.3d at 201–02, 491 P.2d at 437, 98 Cal.Rptr. at 853. However, it will not avail Schindler to argue that out-of-pocket loss is a *necessary* element of a malpractice claim, for it is clear from the record that Schindler has never paid anything toward satisfaction of the tax penalty.

4. The hornbook reference was to Prosser, *Law of Torts* § 30, at 143 (4th ed. 1971). *See Budd,* 6 Cal.3d at 200, 491 P.2d at 436, 98 Cal.Rptr. at 852.