[No. E008908. Fourth Dist., Div. Two. Aug. 26, 1992.]

JOHN L. SCHRADER et al., Plaintiffs and Appellants, v.
JACK C. SCOTT et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

## COUNSEL

Patrick A. McCall for Plaintiffs and Appellants.

Garrett & Tully and Stephen J. Tully for Defendants and Respondents.

## OPINION

## TIMLIN, J.—

### INTRODUCTION

Plaintiffs John L. Schrader and Joy A. Schrader (plaintiffs) appeal from the judgment entered in favor of defendants Jack C. Scott, Jack C. Scott, a professional corporation, Donald L. Rogers, Donald L. Rogers, a professional corporation, Richard D. Anderson, Dennis H. Malody II, Dennis H. Malody II, a professional corporation, and Rogers, Anderson, Malody and Scott (defendants). Plaintiffs had sued defendants for accountant malpractice, and the judgment was entered following defendants' successful motion for summary judgment, based on the theory that plaintiffs' action for malpractice was barred by the statute of limitations. Plaintiffs contended below, and contend on appeal, that the commencement of the statute of limitations for professional malpractice was tolled while they pursued their administrative remedies challenging adverse tax assessments by the Internal Revenue Service (IRS) and California Franchise Tax Board (FTB), and that therefore their action is not barred by the statute of limitations.

### FACTS

Plaintiffs filed their complaint for breach of contract, fraud, and intentional and negligent misrepresentation against defendants on October 23, 1989. They filed their first amended complaint for breach of contract, negligence, breach of fiduciary duty, and negligent misrepresentation on January 12, 1990.

The following facts were agreed to be undisputed by the parties in connection with defendants' motion for summary judgment.

Between 1980 and 1982, defendants advised plaintiffs that investment in certain tax shelters known as "tax straddle partnerships" would reduce their income tax liability. In reliance on this advice, plaintiffs invested in three such tax straddle partnerships between 1980 and 1982, and claimed losses

related to these investments on their income tax returns. In 1982, plaintiffs became aware that the IRS was disallowing such loss deductions. In 1986, plaintiffs concluded that defendants had been negligent in advising them that they could reduce their tax liability by such investments. On December 16, 1986, plaintiffs paid the IRS and the FTB a total of over $240,000 in back taxes and interest related to the disallowance of tax straddle partnership losses which plaintiffs had previously deducted on their income tax returns.

In January 1987, plaintiffs terminated defendants as plaintiffs' accountants, because of their conclusion that they had been given negligent advice. At a meeting with Jack Scott a few weeks after their relationship with defendants had been terminated, plaintiffs told him they believed he had given them negligent advice. By March of 1987, plaintiffs had hired a new accountant and an attorney, and had paid to them fees for services involving resolution of their tax problems related to the tax straddle partnership deductions.

On or about April 6, 1987, and later in July 1987, plaintiffs received notices of final adjustment from the IRS disallowing their tax straddle partnership loss deductions.

In December 1988, plaintiffs and the IRS signed a closing agreement, which finally determined plaintiffs' administrative appeal with the IRS. However, as of October 1990, plaintiffs' FTB administrative appeal had not concluded.

Plaintiffs further contended, in connection with their opposition to the motion for summary judgment, that from 1982 to 1988, they had sought to negate the damages caused by defendants' negligent advice by pursuing administrative appellate remedies with the IRS, and that they anticipated that they might incur additional damages in the form of penalties to be levied by the FTB, again as the result of defendants' negligence.

Given the fact that plaintiffs' complaint was filed on October 23, 1989, defendants contended that plaintiffs' cause of action accrued, and ran from, no later than July 1987, when, in addition to having accused Scott of negligence, and retaining and paying another accountant and attorney to attempt to resolve the problem caused by such negligence, plaintiffs had also received a notice of final adjustment and deficiency from the IRS. Plaintiffs responded that even so, the running of the statute of limitations was tolled while they were exhausting their administrative remedies. The trial court agreed with defendants, and granted their motion for summary judgment, and then entered judgment accordingly.

## Discussion

I. *Standard of Appellate Review*

 Plaintiffs urge that the proper standard of appellate review regarding an appeal from a summary judgment is an independent review of the evidence by the appellate court. Defendants disagree and assert the standard is whether the trial court abused its discretion in granting the motion. We agree with the majority view that independent review is the correct standard. (See discussion of different standards in Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1989) ¶¶ 8.164-8.168.) The inappropriateness of an abuse of discretion standard of review is clearly stated in *Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1515 [285 Cal.Rptr. 385]: "Adherence to such standard is not required. Except for the provision in Code of Civil Procedure section 437c, subdivision (e) (see fn. 3, *ante*), there is no discretion to be exercised by a trial court in considering a motion for summary judgment. Therefore, any error made, if made at all, is one of law, not of discretion. In reviewing an order on a summary judgment, the reviewing court employs the same process as the trial court in determining whether, as a matter of law, summary judgment was appropriate. It is procedurally and legally incorrect to claim that a trial court has abused its discretion in such circumstances. (*Street* v. *Superior Court* (1990) 224 Cal.App.3d 1397, 1402 [274 Cal.Rptr. 595].)"

The general standard is that when reviewing a judgment based on an order granting summary judgment, the appellate court undertakes an independent review of the evidence presented to the trial court to determine whether no triable issues of fact were presented. (*Saldana* v. *Globe-Weis Systems Co.*, *supra*, 233 Cal.App.3d 1505, 1511, 1515.) First, the reviewing court identifies the issues framed by the pleadings, because the motion must be based on the issues as so framed. (*Id.* at pp. 1513-1514.) Second, the court determines whether the moving party, if the plaintiff, has established all of the elements necessary to his or her cause or causes of action *and* negated every defense raised by defendant (*United Community Church* v. *Garcin* (1991) 231 Cal.App.3d 327, 338 [282 Cal.Rptr. 368]) or, if the moving party is the defendant, whether the moving party either has negated at least one element of each of the plaintiff's causes of action, or has established every single element of a complete defense to plaintiff's cause or causes of action. (*Saldana* v. *Globe-Weis Systems Co.*, *supra*, 233 Cal.App.3d 1505, 1513-1514; *DeRosa* v. *Transamerica Title Ins. Co.* (1989) 213 Cal.App.3d 1390, 1397 [262 Cal.Rptr. 370].) Finally, if the moving party has established a

prima facie basis for judgment in its favor, the court considers whether the opposing party has demonstrated that a triable issue of material fact exists so as to preclude summary judgment. (*Saldana* v. *Globe-Weis Systems Co.*, *supra*, 233 Cal.App.3d 1505, 1513-1514.)

Here, because there is no dispute over the facts regarding the sole basis for defendants' motion for summary judgment—expiration of the statute of limitations—the only dispute is over the legal effect and significance of the undisputed facts, which is a pure matter of law. (*Saldana* v. *Globe-Weis Systems, Inc.*, *supra*, 233 Cal.App.3d at p. 1513.)

II. *Tolling of Statute of Limitations*

In this particular case, there is no dispute over whether or when plaintiffs knew or should have known of the wrongful acts constituting the breach or breaches of defendants' professional duties toward plaintiffs. At the latest it was in 1986. ▓▓▓ Therefore, the dispositive issues in this appeal are (1) whether the statute of limitations for the alleged causes of action against defendants for accountant malpractice based on faulty tax advice began to run when plaintiffs sustained actual or appreciable harm as a result of such negligence, or (2) whether the commencement date was tolled until defendants' professional negligence, which caused the harm, had become irremediable and (3) whether "irremediability" would occur only when the administrative appeals concerning plaintiffs' tax liability had been finally exhausted and resolved by the IRS and FTB.

▓▓▓ ▬ ▓▓ ▓▓ Plaintiffs rely on *Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66 [240 Cal.Rptr. 423], a legal malpractice case, not an accountant malpractice case, and the line of cases on which *Robinson* is based for the proposition that the statute of limitations was "tolled"[1] until the harm caused by defendants' alleged wrongful acts became irremediable, which in turn they define as not occurring until after their final tax liability was determined administratively by the IRS and FTB. However, after the briefs in this case had been filed, the California Supreme Court decided *Laird* v. *Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691], and held that when, in 1977, the Legislature adopted Code of Civil Procedure section 340.6 regarding the statute of limitations as to legal malpractice, it implicitly rejected the term "irremediable damage" and codified the discovery rule of *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98

---

[1]"Toll" as a verb means "to suspend or stop temporarily." (Black's Law Dict. (6th ed. 1990) p. 1488. col. 1.)

Cal.Rptr. 837, 491 P.2d 421] and *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 198 [98 Cal.Rptr. 837, 491 P.2d 421], which held that a cause of action for legal malpractice accrues when the client discovers or should discover the facts essential to the malpractice claim, and suffers appreciable and actual harm from the malpractice. (2 Cal.4th at p. 611.)

The *Laird* court held that the appellant victim of legal malpractice sustained actual injury when her underlying action was dismissed as a result of her attorneys' professional negligence and she was compelled to incur legal costs and expenditures in pursuing an appeal of the judgment of dismissal. (2 Cal.4th at p. 615.) It specifically rejected her argument that until she had pursued and completed her appellate remedy, her damages were only speculative, noting that the relevant issue was whether she knew she had been damaged, not whether the amount of the damage had been finally established. (*Ibid.*) It then specifically disapproved *Robinson* v. *McGinn, supra,* 195 Cal.App.3d 66, and the line of similar cases, to the extent those cases held the commencement of the statute of limitations was tolled until the attorney's error could no longer be remedied, i.e., until the appellate process had been exhausted. (2 Cal.4th at pp. 616-617.)

Thus, plaintiffs' argument, based as it is on the above noted legal malpractice cases, has been fatally undercut by the holding in *Laird* v. *Blacker, supra.* Furthermore, plaintiffs' position on the tolling of the statute of limitations is even more untenable, given the holdings in several cases involving the rendering of negligent tax advice.

For example, in *McKeown* v. *First Interstate Bank* (1987) 194 Cal.App.3d 1225 [240 Cal.Rptr. 127], the McKeowns borrowed money from First Interstate Bank to purchase the remaining 75 percent of the stock of an automobile dealership in which they already owned 25 percent of the stock. According to the McKeowns, the bank assured them that they would incur no tax liability for payments made by their automobile dealership corporation on the loan, and as a result of these assurances they entered into the loan agreement.

The loan was taken out in 1971, and the corporation made the loan payments through 1975. The McKeowns and the corporation were audited in 1973, and the McKeowns were preliminarily advised in 1974 of their tax liability for the payments made by the corporation. The McKeowns incurred accountant fees in 1973 in connection with an IRS audit, and apparently incurred attorney fees in 1974 and 1976 in connection with the administrative proceedings before the IRS. In 1976, they received from the IRS a

deficiency notice as to their 1972 taxes. In 1977, they received a deficiency notice as to their 1973, 1974 and 1975 taxes, and in January 1977, they paid their attorney a $1,000 retainer to represent them in tax court litigation. A tax court judgment was entered against them on February 26, 1980, and taxes were assessed in accordance with that judgment on June 8, 1980. They filed a complaint against the bank based on a variety of theories, including fraud, negligence, and breach of fiduciary duty, in 1982.

The bank moved for summary judgment based on the statute of limitations having expired as to all causes of action before the complaint was filed. The trial court granted the bank's motion, and judgment was entered against the McKeowns as to all causes of action. The appellate court affirmed the trial court, concluding that the McKeowns had suffered "appreciable harm" at least as early as January 1977 when they paid attorney fees for representation in the tax court proceeding. (194 Cal.App.3d at p. 1229.) The court did not disagree with the use of the "irremediable injury" test (*Bell* v. *Hummel* (1982) 136 Cal.App.3d 1009, 1016 [186 Cal.Rptr. 688]; *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 432 [173 Cal.Rptr. 917]), but did disagree with the McKeowns' argument that they had not suffered appreciable harm until the tax court judgment became final, stating that "[The bank's] alleged error was in giving faulty advice to [the McKeowns] in 1971 regarding the tax consequences of their agreement. That error became irremediable when [the McKeowns] acted on it in 1972 through 1975. (See *Yandell* v. *Baker* (1968) 258 Cal.App.2d 308, 314 [65 Cal.Rptr. 606], disapproved on another point in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 190 [98 Cal.Rptr. 837, 491 P.2d 421].)" (194 Cal.App.3d at pp. 1230-1231.)[2]

Although the court in *McKeown* did not disapprove of the "irremediable injury" test, its holding that the plaintiffs suffered "irremediable injury" once they acted on the erroneous tax advice is fully in keeping with the holding in *Laird* v. *Blacker, supra,* 2 Cal.4th 606, to the extent that the *McKeown* court concluded that the possibility of seeking administrative review from an unfavorable IRS ruling and even challenging an adverse administrative decision in a proper judicial forum, i.e., Tax Court or United States District

---

[2]*Yandell* v. *Baker* (1968) 258 Cal.App.2d 308 [65 Cal.Rptr. 606] on which the *McKeown* court relied, was decided before the California Supreme Court held that a cause of action for malpractice does not accrue until the plaintiff knows, or should know, of the negligent act. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 176, 190.) Therefore, the emphasis in *Yandell* on the date of the negligent act (or "error," as it was termed in *McKeown*) is now, after *Neel,* simply irrelevant; what is relevant is the date by which the plaintiff should know or have known of the injury caused by the negligent act and when he or she had sustained appreciable and actual damage.

Court, did not negate the fact of actual (and irremediable) injury to plaintiffs caused by their acting on such faulty advice.

The court in *McKeown* distinguished the McKeowns' situation from cases in which *attorney* errors during the course of litigation conceivably could be corrected by subsequent motion or appeal, in which cases the error only became irremediable when the adverse determination had become final, or the remedial motion had been denied. (194 Cal.App.3d at p. 1231.) It noted that in the McKeowns' case, the bank's allegedly erroneous advice could not be remedied by the tax court litigation. (*Ibid.*)[3] This portion of the *McKeown* case, of course, is now no longer good law, given the holding in *Laird* v. *Blacker, supra,* 2 Cal.4th 606.

Defendants also cite another negligent tax advice case, *Moonie* v. *Lynch* (1967) 256 Cal.App.2d 361 [64 Cal.Rptr. 55]. *Moonie* held that a cause of action against an accountant for negligent preparation of tax returns accrued when the government assessed, or the client was aware the government was about to assess, a penalty as the result of the negligence. The client's cause of action accrued when he learned of the accountant's negligence through the notice that a penalty was to be assessed against him. (*Id.* at p. 364; see also *McKeown* v. *First Interstate Bank, supra,* 194 Cal.App.3d at p. 1230.) The client suffered loss, or what the later cases refer to as "appreciable harm" when he became liable for a tax penalty, and the fact of harm was not delayed until the plaintiff actually paid the penalty. (*Moonie* v. *Lynch, supra,* 256 Cal.App.2d at pp. 362-364.) Plaintiffs have made no attempt to distinguish the facts of their case from those of *Moonie.*

Therefore, based on the holdings in *Laird* v. *Blacker, supra,* 2 Cal.4th 606, *McKeown* v. *First Interstate Bank, supra,* 194 Cal.App.3d 1225, and *Moonie* v. *Lynch, supra,* 256 Cal.App.2d 361, we conclude that the trial court properly granted defendants' motion for summary judgment, based on the defense that plaintiffs' cause of action for professional negligence was barred by the statute of limitations, and that judgment in favor of defendants on that cause of action was properly entered based upon the order granting the motion for summary judgment.

---

[3] Actually, the "error" could have been "remedied" in a sense if the tax court litigation resulted in a determination that the advice was correct. The result of such a determination, however, would simply be to wipe out the claimed negligence or fraud nunc pro tunc. Therefore, even though the McKeowns would have incurred actual harm, i.e., the cost of retaining an attorney to pursue the matter in tax court, the harm could not be attributed to any wrongdoing on the part of the bank.

III. *Plaintiffs May Not Assert, for the First Time on Appeal, That the Proper Statute of Limitations for Some of Their Alleged Causes of Action Is Three Years, Not Two Years\**

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Dabney, Acting P. J., and McDaniel J.,† concurred.

---

\*See footnote, *ante*, page 1679.

†Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.