Filed 9/28/22  City of L.A. v. Katangian CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CITY OF LOS ANGELES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHELLINE KATANGIAN et al.,<br><br>    Defendants and Appellants. | B309215<br><br>(Los Angeles County<br>Super. Ct. No. 18STCV02275) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge.  Affirmed.

Law Offices of Thomas A. Nitti and Thomas A. Nitti for Defendants and Appellants.

Michael N. Feuer, City Attorney, Michael J. Bostrom and Steven S. Son, Deputy City Attorneys, for Plaintiff and Respondent.

Shelline Katangian, Shelly's Volume Transportation Services, Inc. (SVT), and Key Disposal and Recycling, Inc. (Key) (collectively appellants) appeal from a judgment entered against them following the trial court's grant of summary judgment in favor of the City of Los Angeles (city) on the city's claims against appellants for violations of the California False Claims Act (Gov. Code, § 12650 et seq.) and the city's solid waste hauling ordinance (L.A. Muni. Code, § 66.32 et seq.).

Appellants do not challenge the underlying factual findings against them, which led to the entry of summary judgment in favor of the city.[1] Instead, appellants challenge (1) the constitutionality of the penalties imposed upon them, (2) the trial court's legal conclusion that a permit was required for appellants' waste hauling activities, and (3) the constitutionality of the "recycLA program" under the California constitution. Since appellants failed to raise it below, their first argument is forfeited. Because appellants failed to provide sufficient legal authority and factual support for their claims, all three

---

[1] For the first time in their reply brief, appellants raise a factual argument that Katangian's signature on the city's waste hauling forms was inadequate to show an intent to violate the False Claims Act by knowingly or recklessly making false statements. "Raising a new theory in a reply brief is improper and unfair to [respondents]," and "[w]e may decline to consider an argument raised for the first time in a reply brief if no good reason is demonstrated for the delay in raising the point." (*Simpson v. The Kroger Corp.* (2013) 219 Cal.App.4th 1352, 1370.) As appellants have failed to set forth a good reason for their delay in raising the point, we therefore decline to address the issue since the city has not had a fair opportunity to respond.

arguments fail.  As appellants have failed to establish error, we affirm the judgment.

## FACTUAL BACKGROUND

**Key's permit and revocation**

Under the Los Angeles Municipal Code, a trash hauler may not collect, remove, or transport solid waste generated within the city unless the hauler obtains a permit (AB 939 compliance permit) from the city.  (L.A. Muni. Code, § 66.32.1(a)(1).)  After receiving an application signed by Katangian on behalf of Key, the city issued Key an AB 939 compliance permit in December 2002.  To renew the permit, Key was required to file yearly renewal applications and annual reporting forms disclosing the amount of solid waste hauled within the city and the gross receipts.  This information was required to ensure that all AB 939 compliance fees were paid.

In 2010, the city audited Key's business operations for the period of January 2006 through December 31, 2007, and found that Key underreported its gross receipts and failed to pay $236,616.45 in AB 939 compliance fees.  Following the audit, Key agreed to a monthly payment plan with the city, but failed to comply with the plan.

In 2012, the city conducted a second audit of Key's operations, for the period of January 1, 2008, through December 31, 2010.  This audit revealed that Key had again underreported its gross receipts and failed to pay an additional $441,175.51 in AB 939 compliance fees.  The city made numerous attempts to collect, but Key again failed to pay all amounts owed.

In March 2013, the city revoked Key's AB 939 compliance permit and has not reinstated Key's AB 939 compliance permit.

**SVT's permit and revocation**

On June 10, 2011, after the city first audited Key's operations, the city received SVT's application for an AB 939 compliance permit signed by Katangian, SVT's sole owner, officer, and director. On June 13, 2011, the city issued SVT an AB 939 compliance permit, permitting SVT to collect, remove, and transport solid waste generated within the city.

From May 2012 through April 2017, the city received SVT's permit renewal applications and annual reporting forms, all of which were signed by Katangian as SVT's president or owner/president. In each of the annual reporting forms, Katangian represented that SVT hauled less than 1,000 tons of solid waste generated within the city for the prior calendar year.

On May 11, 2017, the city informed SVT that it intended to inspect SVT's books and records on May 26, 2017, to audit the information SVT provided in its annual reporting forms for the period of January 1, 2014, through December 31, 2016. SVT delayed the inspection on the city's first three attempts to inspect SVT's records. After further communications, SVT agreed to bring its business records to the Bureau of Sanitation's Los Angeles office.

On June 20, 2017, a representative of SVT arrived at the Bureau of Sanitation in Los Angeles. While the representative brought several boxes of documents, the representative would not wait for city staff to copy all of the records. City staff were only able to copy one register of documents, containing a schedule of invoices from December 2, 2013, to January 1, 2014. The billing register was under the name of Key, not SVT.

City staff demanded that SVT provide specific reports, including its payment register and customer list with service

4

addresses.  On July 17, 2017, after more than 10 separate calls from city staff to SVT, SVT finally turned over to the city the requested records.

The records revealed that 584 of the 589 invoices listed under Key's name had the same date, invoice number, account number, and account name as under the complete billing register SVT produced.  In addition, SVT had only one vehicle registered to it, and that vehicle was not listed on SVT's permit application.  Of the eight trucks SVT listed in its permit application, seven were actually registered to Key.

The records further revealed that the reported tonnage and gross receipts reported by SVT were inaccurate.  The city calculated that for the period of January 1, 2014, to December 31, 2016, SVT owed $1,204,834 in AB 939 compliance fees (10 percent of $12,048,332 in gross receipts) and an additional $120,483 in late fees (10 percent of the outstanding AB 939 compliance fees).

The city scheduled for August 17, 2017, an exit interview with SVT to allow SVT to ask questions or provide additional information.  SVT failed to attend the exit interview.  The city thus finalized the audit and mailed the audit report to SVT on September 1, 2017.  Later that month, the city informed SVT that its AB 939 permit would be revoked.

SVT lost an administrative appeal, and on February 16, 2018, the city revoked SVT's AB 939 compliance permit and informed SVT that it must immediately cease all solid waste hauling activities within the city.  The city has not reinstated SVT's AB 939 compliance permit.  The city has also not received any payment on the $1,325,317 invoice the city mailed to SVT on September 1, 2017.

## PROCEDURAL HISTORY

### The pleadings

On October 25, 2018, the city filed a complaint against appellants for violations of the False Claims Act and the city's solid waste hauling ordinance. The city prayed for treble damages, in an amount to be proven at trial but no less than $3,614,502, civil and statutory penalties, and an injunction prohibiting appellants from continuing their solid waste operations within the city.

On December 14, 2018, appellants filed general denials to all of the city's allegations without asserting any affirmative defenses.

### Preliminary injunction and contempt

On March 13, 2019, the city obtained a preliminary injunction enjoining appellants from collecting, removing, or transporting solid waste generated within the city.

On May 31, 2019, the trial court held a contempt trial against appellants arising out of their continued operations within city limits in violation of the preliminary injunction. The trial court adjudged appellants guilty of contempt, imposed a fine, and ordered appellants to pay the city's attorney fees and costs. On February 28, 2020, the trial court entered an order of contempt against appellants.

### Summary judgment and appeal

On June 5, 2020, the city moved for summary judgment against appellants.

On August 14, 2020, appellants filed their opposition to the city's motion for summary judgment.

On August 24, 2020, the city filed its reply.

On August 31, 2020, the trial court issued a minute order granting the city's motion for summary judgment. On September 21, 2020, the trial court entered judgment in favor of the city. The trial court found appellants jointly and severally liable to the city in the amount of $3,614,502 in the form of treble damages for knowingly making false statements to the city in April 2015, April 2016, and April 2017 in violation of the False Claims Act. The trial court further found appellants jointly and severally liable to the city in the amount of $33,000 in the form of civil penalties, for the same false statements. Finally, the trial court found appellants jointly and severally liable to the city in the amount of $1,447,500 in the form of statutory penalties, for collecting, removing, and transporting solid waste generated within the city without an AB 939 compliance permit for a period of 579 days from February 16, 2018, to September 17, 2019. Appellants were enjoined from collecting, removing or transporting any solid waste within the city without first obtaining an AB 939 compliance permit.

On November 13, 2020, appellants filed their notice of appeal from the judgment.

## DISCUSSION

### I.    Standard of review

The grant of summary judgment is subject to de novo review. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) "[W]e independently examine the record in order to determine whether triable issues of fact exist to reinstate the action." (*Ibid.*) Where there is no dispute over the facts regarding the basis for a summary judgment motion, "the only dispute is over the legal effect and significance of the undisputed

7

facts, which is a pure matter of law." (*Schrader v. Scott* (1992) 8 Cal.App.4th 1679, 1684.)

## II. Appellants have failed to raise a triable issue of material fact

Appellants do not raise any triable issue of material fact in their opening brief. Thus, we decline to address in detail the underlying facts regarding appellant's violations of the provisions at issue and address only the legal issues raised by appellant on appeal.

## III. Constitutionality of penalties

Appellants' first argument is that the penalties ordered by the trial court violate the excessive fines clauses of the federal and state Constitutions. The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The California Constitution includes an almost identical provision. (Cal. Const., art. I, § 17.) Appellants argue that the fines imposed by the trial court constituted penalties and trebled damages, and because the trebling of damages is punitive in nature, appellant argues, most of the award is a penalty.

We find appellants' constitutional argument forfeited for several reasons. First, appellants failed to raise this defense in the trial court and failed to allege any constitutional claims as affirmative defenses in their responsive pleadings below. With the filing of its complaint, the city put appellants on notice that the city was seeking treble damages under the False Claims Act, up to $11,000 in penalties for each of appellants' false claims, and up to $2,500 in daily penalties for appellants' violations of the Los

8

Angeles Municipal Code.  Appellants cannot now claim in earnest to have been surprised by the amount awarded against them.

As appellants point out, we have discretion to reach the merits of an issue raised for the first time on appeal in certain circumstances.  For example, an appellant may be permitted to change his or her theory when a question of law alone is presented on the facts appearing in the record.  (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1459.)  However, we decline to do so under the circumstances of this case because appellants' arguments depend on facts that were not made part of the record in this case.

Appellants first argue that the penalties were disproportionate to the gravity of the offense because a substantial portion of appellants' waste hauling activities, for which the penalties were awarded, were accomplished by servicing facilities that are exempt from the city's general waste hauling law.  As will be discussed below, appellants have failed to provide legal authority suggesting that trash haulers may service specific facilities without a permit.  Further, appellants provide no citation to supporting evidence in the record showing that they serviced such allegedly exempt facilities.[2]

---

[2]      Katangian's declaration provides an unsupported legal conclusion that ". . . SVT was hauling waste from facilities that are exempt from the City's waste hauling ordinance."  In the absence of any legal authority showing that waste haulers were permitted to haul waste from certain facilities without permits, and in the absence of specific evidence supporting this assertion, the trial court properly disregarded this statement as conclusory.  (*Hayman v. Block* (1986) 176 Cal.App.3d 629, 638 (*Hayman*) [declarations in support of or in opposition to summary judgment

Appellants next argue that courts must consider the individual circumstances of the defendant when deciding whether a penalty is excessive. Specifically, without citation to the record, appellants argue that the individual appellant was, and remains, in bankruptcy. Appellants fail to clarify what type of bankruptcy, nor do they specify any details of the individual appellant's financial condition or ability to pay. Further, appellants make no mention of the financial condition of SVT or Key, the corporate appellants. Appellants fail to point to any evidence in the record supporting their argument that appellants' financial conditions were disproportionate to the fines imposed. In the absence of such evidence, appellants' excessive penalty claim cannot be properly analyzed. Thus, we decline to address it further. (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1450 ["'The appellate court can deem an argument raised in an appeal from a grant of summary judgment waived if it was not raised below and requires consideration of new factual questions.'"].)

Appellants forfeited their constitutional argument by failing to raise it below. Although we have discretion to decide this issue, we decline to do so because the factual record below has not been adequately developed.

## IV. Exemption

Appellants next argue that their waste hauling activities did not violate the city's law because hauling waste from state, county, and other government facilities is exempt from the Los Angeles permit requirement. In support of this argument,

---

"must cite evidentiary facts, not legal conclusions or 'ultimate' facts"].)

10

appellants cite a November 9, 2012 report sent to the city council stating that "[s]tate, county and other government agencies are immune from local regulation of trash collection" and that "[w]aste haulers serving those government entities would therefore not be restricted by an exclusive franchise system." The document does not support appellants' position that they were not required to have a valid permit, or comply with the permit fees, in order to service government entities. Further, as set forth above, appellants provided no competent evidence that they serviced government facilities.

Appellants have failed to establish that they were exempt from the Los Angeles permit requirement. The document provided by appellants does not amount to legal authority suggesting that trash haulers that service government entities are not required to have permits and pay fees, nor are there any facts in the record supporting appellants' claim that they serviced government entities. Therefore, we decline to address this argument further.

## V.     Constitutionality of "recycLA program"

Appellants next argue that the city's law requiring permits is unconstitutional. Appellants argue that their permits were improperly revoked when the city implemented its recycLA program pursuant to City of Los Angeles Ordinance No. 182986. Appellants provide a lengthy argument with no citation to any law or facts in the record to support it.

Appellants have forfeited their argument that the recycLA program is unconstitutional. First, appellants failed to develop this argument in the trial court or provide any factual support for their conclusory claim that the recycLA program is unconstitutional. Appellants argued in opposition to city's

11

summary judgment motion that "there are several pending cases that allege that permits are not required to haul waste in Los Angeles, thus [appellants] would not be liable for permit fees." Appellants argued that "summary judgment/ adjudication is improper until these other actions pending in this same superior court have been determined." Appellants point to no authority or support for their position that any pending case supports the proposition that waste haulers do not need permits in the city.[3] For this reason, on May 31, 2019, the trial court denied appellants' ex parte application for leave to file a cross-complaint to allege a claim against the city in connection with recycLA.[4] And just a few weeks earlier, on May 8, 2019, the trial court declined to relate the present matter with the recycLA litigation, stating that "the cases in Department 17 are not factually related . . . in any significant way and involve different legal theories and claims." (Boldface omitted.) Appellants make no argument on appeal that these rulings were incorrect.

Not only did appellants fail to properly develop this argument below, appellants have failed to support the argument on appeal with proper citations to the record and citations to

[3] The city provided the trial court with a copy of a consolidated class action complaint filed by private property owners. The complaint alleged that the city's implementation of recycLA imposed an illegal tax and sought a refund of those taxes. Contrary to appellants' assertion below, the complaint did not allege that permits were not required to haul waste in Los Angeles.

[4] The city pointed out that it sought summary judgment arising out of appellants' false claims and failure to pay AB 939 compliance fees through April 2017, months before recycLA even came into effect.

12

legal authority.  Appellants provide a long description of the purported history of the implementation of the recycLA program without citation to the record.[5]  This violates the Rules of Court, which provide that "[i]f a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; see Cal. Rules of Court, rule 8.204(a)(1)(C).)  In addition, appellants have failed to provide any citation to legal authority to support their argument that recycLA is unconstitutional.  "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error."  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)  Appellants have not done so, therefore their claim that the recycLA program is unconstitutional "'is deemed to be without foundation and requires no discussion'" by this court.  (*Ibid.*)

The trial court's judgment is presumed to be correct, and it was appellants' burden to affirmatively show error.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  Appellants have failed to meet their burden of showing error.

---

[5]     Appellants also fail to provide any factual support for their position that the city failed to comply with the requirements of Proposition 218 (Gen. Elec. (Nov. 5, 1996).).  Instead, their argument to this court is made "[u]pon information and belief." In their reply brief, appellants cite the same argument made below, also without citation to authority or evidentiary support.

## DISPOSITION

The judgment is affirmed.  The city is awarded its costs of appeal.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
HOFFSTADT, J.