87 F.3d 1317
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ASSICURAZIONI GENERALI, S.P.A., Plaintiff-Appellant,
v.
FIRST STATE INSURANCE COMPANY; Adams Duque & Hazeltine;
Professional Liability Claims Managers,
Defendants-Appellees.
 No. 95-55138.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 10, 1996.
Decided June 18, 1996.
 
 1
 Before: GIBSON,* NOONAN and THOMPSON Circuit Judges.
 
 
 2
 MEMORANDUM**
 
 
 3
 Insurer Assicurazioni Generali S.P.A. (Generali) paid $1.25 million to settle a bad faith action brought by lawyer Joseph Siler and Kurt Simon for Generali's withdrawal from Siler's defense under a professional liability policy issued by Generali and other insurers. Generali brought the instant action against the policy claims manager Professional Liability Claim Managers (PLCM), another insurer First State Insurance Company and PLCM's counsel Adams, Duque & Hazeltine (ADH). Generali appeals the district court's grant of PLCM's motion to dismiss under Fed.R.Civ.P. Rule 12(b)(6) and ADH's motion for summary judgment. We AFFIRM the district court.
 
 BACKGROUND
 
 4
 Joseph Siler and Robert Mayman were partners in the law firm Mayman, Siler & Associates. The firm carried legal malpractice insurance issued by a number of subscribing insurers, including Generali. The firm applied annually for a subscription policy that was issued effective on March 10 of each year beginning in 1986 and ending in 1989. Generali had a 6% participation in the policy effective from March 1989--March 1990. First State had a 40% interest in the 1986 policy and no participation in the 1989 policy. To qualify for coverage a claim had to be both made and reported in the policy coverage period and had to fall under the period of "prior acts" coverage, which began on March 10, 1986.
 
 
 5
 The 1986 Trevillian Action and Simon Cross-Claim
 
 
 6
 In 1981 Siler and Mayman affiliated with California Corporation Leasing, Ltd. (California Leasing) as individuals. In 1982 Siler successfully solicited Kurt Simon, who was also Siler's client, to join California Leasing as a limited partner. Siler advised Simon that his liability would be limited to a pro rata share of $90,000 liquidated damages under an aircraft lease for a plane California Leasing leased from Marvin Trevillian and subleased to another party. In fact, Simon's liability potentially included costs to restore airworthiness of the aircraft if the sublessee breached. The sublessee defaulted on the lease in 1985, and in 1986 Trevillian sued Simon, Siler and Mayman individually in state court for alleged breach of the aircraft lease agreement (the "Trevillian Action"). In November 1986 Simon filed a cross-claim against Siler for breach of fiduciary duty (the "Simon Cross-Claim").
 
 
 7
 In November 1988 Siler was deposed for the Simon Cross-Claim. Simon's lawyer Dawn Whitney attempted to ask Siler about legal advice rendered to Simon. Upon objection by Siler's lawyer, Whitney countered that the claim encompassed Siler's acts as Simon's attorney. She also threatened to move to compel the answers and to amend the Simon Cross-Claim to include malpractice but never took either step. Later Whitney said it was not her view at the 1988 deposition that the Simon cross-complaint encompassed Siler's acts as an attorney.
 
 
 8
 Mayman completed Mayman, Siler & Associates' application for its 1989-90 insurance policy on January 25, 1989. He made no mention of the November 1988 deposition exchange, asserted no supplemental claims and answered "No" to the question "Have any claims of which the proposed insured is aware been made within the last ten (10) years or are any claims now pending?" He also answered that the firm was not aware of "any prior incident, act, error or omission which there is reason to suppose might fall within the scope of the proposed insurance."
 
 
 9
 Trial resulted in a judgment of $1,056,519.92 for Trevillian. In December 1989 Simon settled with Trevillian for $970,000 and all parties to the Trevillian Action and Simon Cross-Claim signed a Release, which stated: "Simon is not giving up any rights he may have against [Mayman and/or Siler] to pursue claims for attorney malpractice."
 
 
 10
 Simon's 1990 Malpractice Action Against Siler
 
 
 11
 In March 1990 Simon sued Siler (the Malpractice Action) alleging that Siler's legal malpractice enhanced Simon's liability in the Trevillian Action. On March 8, 1990 Siler notified his insurance broker of this new complaint and requested coverage under the 1986, 1987, 1988 and 1989 policies. The broker tendered the notice to PLCM which unilaterally allocated the claim to the 1989 policy and appointed a law firm (the Wilson Firm) to defend Siler. On September 13, 1990, PLCM wrote to Mayman and Siler to indicate PLCM "had requested permission to issue a reservation of rights" because of the policy definition of professional services, the prior acts restriction and possible prior notice on the claim.
 
 
 12
 On October 2, 1992 the Wilson Firm provided PLCM information revealing the substance of the 1988 Siler deposition. PLCM immediately retained ADH to perform a coverage analysis of the Malpractice Action. In a letter to PLCM dated November 5, 1990 (the Coverage Opinion) Andrew Waxler of ADH concluded that Simon's Malpractice Claim was not covered by the 1989 policy because the claim was made, at the latest, at the November 1988 deposition but was not reported until 1990. Waxler also opined that Mayman, Siler & Associates knew of the claim but failed to disclose it on the application for the 1989 policy. Waxler advised PLCM that the underwriters could withdraw their defense of Siler. Generali received a copy of the Coverage Opinion.
 
 
 13
 The Coverage Opinion also enclosed a reservation of rights letter stating that none of the alleged wrongful acts fell under the prior acts period and that the claim was not made and reported during the applicable policy period. PLCM forwarded the reservation letter to Siler on November 5, 1990. Knowing that the trial date was set for December 27, 1990, Generali formally withdrew its defense on November 21, 1990.
 
 
 14
 The Coverage Opinion acknowledged that a decision to withdraw was not without risk, since it was not clear how a court would rule on any waiver arguments Siler might raise. After Siler wrote PLCM on November 21, 1990 raising waiver arguments Waxler analyzed them in a January 7, 1991 letter to PLCM. Waxler concluded that no waiver appeared to have occurred as to the defense that the claim had to be made and reported in the coverage period, because the carriers had no knowledge of facts establishing this defense until September 1990. Generali received this letter but did not change its decision to withdraw. Trial was continued to January 28, 1991. Siler represented himself pro se. In April 1991, judgment was entered against Siler for $1,352,221.
 
 
 15
 Simon and Siler's Bad Faith Action Against Insurers
 
 
 16
 In October 1991 Simon and Siler sued Generali and the other underwriters except First State under all four malpractice policies (the Bad Faith Action). PLCM and the Wilson Firm were also named in the complaint, which included a bad faith claim for withdrawing coverage in Simon's Malpractice Action against Siler. On November 18, 1991 PLCM engaged ADH to represent all insurers in the Bad Faith Action for the limited purpose of narrowing and disposing of issues by demurrer and disposing of the case by summary judgment. The next day, ADH immediately informed PLCM of a conflict as to whether an advice of counsel defense should be asserted.
 
 
 17
 By letter dated November 30, 1992 Waxler notified the underwriters that because of further conflicts, ADH could no longer represent any of the parties even for the coverage summary judgment motion. When summary judgment was denied the other carriers settled out. Only Generali remained, which then settled for $1.25 million rather than litigate its coverage defenses.
 
 The Instant Action
 
 18
 In November 1993 Generali filed this suit in the district court against First State, ADH and PLCM, alleging breach of contract, negligence, breach of fiduciary duty and other claims. On June 8, 1994 the district court granted PLCM's motion to dismiss under Fed.R.Civ.P.Rule 12(b)(6) for failure to state a claim. The malpractice claims against ADH proceeded. ADH moved for summary judgment arguing that its advice to Generali was correct as a matter of law and its representation free of conflict. The district court granted summary judgment in December 1994.
 
 ANALYSIS
 I. PLCM's Rule 12(b)(6) Motion to Dismiss
 
 19
 A dismissal for failure to state a claim under Fed.R.Civ.P.Rule 12(b)(6) is a question of law reviewed de novo. Stone v. Travelers Corp., 58 F.3d 434, 436-437 (9th Cir.1995). Generali claimed PLCM's breach of contract, negligence and breach of fiduciary duty. The breach of contract claim alleged, inter alia, PLCM's failure to investigate the Malpractice Action, recommend issuing a reservation of rights, and assert the applicability of the 1986 policy, and alleged PLCM's error in retaining ADH to defend all insurers in the Bad Faith Action after being advised of the potential conflict of interest. Generali also alleged that PLCM breached its duty of reasonable care and its fiduciary duty in administration of Siler's claims.
 
 
 20
 The district court granted PLCM's motion to dismiss on the theory that the claims were "fundamentally claims for contribution and indemnity by one alleged co-tortfeasor or co-obligor against another" and thus barred by California's good faith settlement law, Cal.Code Civ.Pro §§ 877 and 877.6. Generali argues that because PLCM owed these duties directly to Generali the claims fall outside the bar of the statute. Historically, "indemnity" and "contribution" among tortfeasors have been distinguished. See Restatement (Second) of Torts, §§ 886A and 886B (1977). Total indemnity was the rule governing recovery by a principal from an agent whose tort had made the principal liable. Id., § 886B(2)(a) and Comment on Clause (a). The California statutes deal with both "total indemnity" and "equitable indemnity" or contribution. Far West Financial Corp. v. D & S. Co., 46 Cal.3d 7696, 799 251 Cal.Rptr. 202, 760 P.2d 399 (1988).
 
 
 21
 PLCM's predecessor in interest settled the Bad Faith Action as a good faith settlement under § 877 and Generali filed a notice of non-opposition to that settlement. The judge in the Bad Faith Action certified the settlement to be in good faith.
 
 
 22
 The California Supreme Court has interpreted the § 877.6 bar against suits for equitable indemnity broadly. Even claims alleging an inferred obligation to indemnify based on the breach of some contractual relationship have been barred. In Bay Development, Ltd. v. Superior Court, 50 Cal.3d 1012, 1035, 791 P.2d 290, 304 (1990), the court concluded that implied contractual indemnity is a form of equitable indemnity barred by § 877.6. Id., 50 Cal.3d at 1029, 1035, 791 P.2d at 300, 304.
 
 
 23
 Bay specifically sought implied contractual indemnity. Generali did not plead indemnity but sought damages in the amount of its settlement in the Bad Faith Action and its costs of defense of the Malpractice Action. The Bay court indicated that had Bay sought the ordinary damages recoverable for breach of contract Bay's claims might not have been barred. However, Bay's claims were a "classic claim for indemnity" because the claims sought to shift to Home any damages for which Bay might be liable to the unit owners. Bay, 50 Cal.3d at 1033, n. 13, 791 P.2d at 303. Here, Generali simply seeks to shift to PLCM the settlement and defense costs Generali paid. The district court properly granted PLCM's motion to dismiss.
 
 
 24
 II. Adams, Duque & Hazeltine's Motion for Summary Judgment
 
 
 25
 We review a grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). In granting summary judgment, the district court rejected Generali's claims that ADH committed malpractice by its advice regarding the insurers' (a) coverage of the Simon Malpractice Action, (b) estoppel from withdrawing coverage for Siler before trial and waiver of withdrawal rights, and (c) liability in the Simon/Siler Bad Faith Action. The court also rejected a fourth claim that ADH committed malpractice by defending Generali despite a conflict of interest in the Bad Faith Action.
 
 
 26
 (a) Coverage
 
 
 27
 ADH advised Generali that the 1989 policy did not cover Simon's 1990 Malpractice Action against Siler. ADH's advice was correct as a matter of law because (1) prior acts coverage was limited to acts occurring after March 10, 1986 and the Malpractice Claim related to advice Siler gave in 1982, and (2) Siler's firm failed to reveal the possibility of such a claim when applying for the 1989 policy.
 
 
 28
 Siler gave incorrect advice on Simon's liability under the aircraft lease agreement in 1982. The fact that, contrary to Siler's advice, Simon's exposure would exceed his pro rata share was established by Simon executing the guaranty in 1982. The sublessee's 1985 default on the aircraft lease triggered Simon's liability. While the exact amount of that liability was not determined until the Trevillian Action settled in 1989, Simon's liability for damages was irremediable no later than the 1985 default, too early for prior acts coverage under the policy. Moreover after 1985 Siler was not Simon's counsel but was being sued by Siler!
 
 
 29
 For coverage Simon had to make the claim within the period covered by the policy and Siler had to report it in that period. Simon filed his Malpractice Action in March 1990 and Siler reported it to PLCM on March 8, 1990, two days before the 1989 policy expired. In January 1989, when Mayman had applied for the 1990 policy for the Mayman & Siler firm, Siler and Mayman knew about the ongoing Trevillian action and Simon cross-claim, and Siler knew about the 1988 deposition exchange. Yet Mayman failed to report those matters in the application. This failure alone is sufficient grounds to deny coverage. "Under California law an insurer may rescind an insurance policy if the insured conceals material facts." Rallod Transp. Co. v. Continental Ins. Co., 727 F.2d 851, 853 (9th Cir.1984).
 
 
 30
 Even though the 1988 deposition exchange (on which the district court relied in granting summary judgment in this case) probably did not amount to a claim, Mayman should have reported it on the 1989 application. Siler's discussion at the 1988 deposition about his 1982 advice to Simon reveals at least that Siler was aware of the potentially legal character of the advice on which Simon later sued. Also, any notification the insurers received in 1986 of the initial Trevillian Action did not preclude the need to reference that action or the Simon Cross-claim in the 1989 policy application.
 
 
 31
 (b) Waiver and Estoppel
 
 
 32
 The district court concluded that ADH was correct in advising Generali that waiver and estoppel did not prevent Generali from withdrawing defense and in noting that a court might find otherwise. We agree. Under California law waiver is a question of fact. Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1559 (9th Cir.1991). In the insurance context California courts have blurred the distinction between waiver and estoppel. Id., Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 900 P.2d 619, 637 (1995). Waller quotes Intel for the proposition:
 
 
 33
 California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.
 
 
 34
 Id. (quoting Intel ). "Whether a waiver has occurred depends solely on the intention of the waiving party." Waller, 900 P.2d at 636 (citations omitted). Generali had the obligation to point to facts showing that it had no intention to waive non-coverage. Generali failed to identify such facts.
 
 
 35
 (c) Bad Faith
 
 
 36
 The district court properly concluded that ADH correctly advised Generali it was not liable in the Bad Faith case because no duty to defend existed. The court relies on the clear trend in California appellate decisions to this effect. After the district court issued its opinion, the California Supreme Court provided specific guidance:
 
 
 37
 It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer.
 
 
 38
 Waller, 11 Cal.4th at 36 (citations omitted). This court also recognizes that under California law when "coverage does not exist ... [the insurer] is not liable for breach of contract nor for breach of the covenant of good faith and fair dealing." State Farm Mutual Auto. Ins. Co. v. Davis, 7 F.3d 180, 184 (9th Cir.1995).
 
 
 39
 (d) Conflict of Interest Damages
 
 
 40
 The district court correctly concluded that Generali was not damaged by ADH's violation of Rule 3-310(c) of the California Rules of Professional Conduct by failing to advise Generali of conflicts of interest before undertaking to represent Generali and other insurers in the Bad Faith Action. Any damages for this violation were purely speculative.
 
 
 41
 This court recognizes the California Supreme Court's requirement for a finding of malpractice that "appreciable and actual harm" must flow from the negligent conduct. United States v. Gutterman, 701 F.2d 104, 105 (9th Cir.1983), citing Budd v. Nixen, 6 Cal.3d 195, 200 (1971). The Budd court said that "the mere breach of a professional duty causing only nominal damages, speculative harm, or the threat of future harm--not yet realized--does not suffice to create a cause of action for negligence." Id. 6 Cal.3d at 200.
 
 
 42
 To establish damages Generali relies only on the declaration of its assistant claims manager, who speculated on the basis of hearsay from counsel that Generali "could have settled [the Bad Faith Action] for substantially less money than it ultimately paid in settlement." In fact, even after Generali hired new counsel it failed to respond to a $600,000 settlement offer in the Bad Faith case, far less than the $1.25 million Generali actually paid in settlement. By failing to show that the damages were anything more than speculative Generali has failed to raise a genuine issue of material fact as to an essential element of its claim for ADH's conflict of interest.
 
 
 43
 The district court properly granted ADH's motion for summary judgment on each of the four alleged acts of malpractice.
 
 
 44
 AFFIRMED.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3